**LEWIS v. TEXAS EMPLOYERS'
INS. ASS'N.**

No. 13706.

Court of Civil Appeals of Texas.   Dallas.
Sept. 20, 1946.

Rehearing Denied Oct. 25, 1946.

188

Chaney & Davenport, of Dallas, for appellant.

Burford, Ryburn, Hincks & Ford and Howard Jensen, all of Dallas, for appellee.

YOUNG, Justice.

This is a suit to set aside an award of the Industrial Accident Board and to recover on behalf of appellant, widow of Ben Lewis, compensation benefits by reason of fatal injury allegedly sustained by the latter while in the employ of A. A. Greer, plastering contractor. Upon jury findings in response to special issues, the court rendered judgment for defendant insurer from which claimant has duly perfected an appeal.

Deceased Lewis had been engaged generally in carrying plaster to workmen on the job; also in moving equipment as required. There is testimony that on December 15, 1944, Lewis received a blow on his stomach while carrying a mortar board (wooden, three feet square, four legs, weight some 50 pounds) up a stairway, by reason of its bumping against an adjacent wall; that he at once complained of pain in lower abdomen, though finishing his day's work; that he did not return to the job, and died January 2, 1945; a later autopsy disclosing that the cause of death was an appendiceal abscess.

It was the contention of appellant that said abscessed condition was chronic, having existed sufficiently long for a wall of dead tissue to form, limiting infection, and into which the appendix tip had protruded; that a perforation of appendix followed the blow of December 15, resulting in death some two weeks later. On this, the testimony of medical experts was highly conflicting; much of which supported defendant's theory that death of Lewis resulted from natural causes independently of and in nowise connected with his employment.

Jury issues and answers material here are, in substance: That Ben Lewis sustained accidental personal injury on December 15, 1944, while in course of employment with A. A. Greer; answering "No" to issues 3 and 4, reading: (3) "Do you find from a preponderance of the evidence that such injury, if any you have found in answer to special issue No. 1, naturally resulted in the death of Ben Lewis?" (4) "Was the death of Ben Lewis solely the result of disease?"

Summarized, the points of appeal are: (1) The court's error in rendering judgment for defendant because of irreconcilable conflict in material issues of fact, in that, only two alternatives were presented in the record—(a) death caused in part by injury or (b) death caused solely by disease; the jury having found that the personal injury sustained did not naturally result in the death of Lewis and, also, that his death was not solely the result of disease; (2) error in the wording of issue 3, with the term "naturally resulted" defined as meaning "according to the natural course of events, according to nature, spontaneously"; since (a) such form of issue and definition precluded the idea of there being more than one cause of death and (b) such submission required the jury, on affirmative answer, to say that the accident was a proximate cause of death; (3) error in the court's instruction on "injury" or "personal injury," since the language thereof excludes from consideration by the jury of a death from injury that may have aggravated or accelerated a pre-existing disease; (4)—(a) error in refusing to admit in evidence that part of a letter filed with the Industrial Accident Board setting forth patient's case history as given to his physician when applying for treatment, said letter being offered on cross-examination of the doctor who admitted authorship thereof, there being admissions in the rejected portion that would serve as a proper basis for cross-examination; (b) in placing limitation on the cross-examination of Dr. Jay Waddell with respect to case history given him by the patient when applying for medical treatment; (5)—(a) error in refusal

of plaintiff's first offer of autopsy report in evidence after identification by Dr. Bell, since said report contained objective fact findings as to condition of deceased's body material to ascertainment of cause of death; (b) in refusing to permit the witness Dr. Gilbert to take into consideration the autopsy report made by Dr. Bell, since same likewise contained material objective findings which were a proper basis for the opinion of witness as to cause of death; (6) error of court in striking from counsel's hypothetical question addressed to Dr. Gilbert, plaintiff's medical expert, the hypothesis of deceased's appendix having been involved on day of injury, plaintiff having previously shown by witnesses Griffin and Bell that the appendix was either involved on said date, or that there was a likelihood of involvement.

■ A material conflict in jury findings follows a determination that one answer, standing alone, supports a plaintiff's recovery, while the other answer, standing alone, supports an opposite judgment. Pearson v. Doherty, 143 Tex. 64, 183 S.W. 2d 453. Under the answers to neither issue 3 nor 4 was plaintiff entitled to a judgment herein, and thus her argument of irreconcilable conflict is refuted. To the contrary, issue 3 requires a defendant's judgment, while plaintiff cannot recover under issue 4, absent a finding of causal connection between injury and death. In Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, cited by appellant, a connection was established by the jury finding that Guzman's death was not due to a cause other than an injury sustained in the course of his employment. Here, the word "disease" is not defined in the court's charge, and whether the jury considered that an infected appendix was a disease, we do not know. More in point is Josey v. Maryland Casualty Co., Tex.Civ.App., 153 S.W.2d 259, where, under the particular facts, a jury finding that plaintiff did not sustain her alleged injury, and another that her condition was not due solely to a cause other than accidental injury, were held reconcilable; and the negative finding presented in Josey's appeal as conflicting, appears much more exclusive of other causes than

is issue 4 of the instant case. The rule is settled that where an apparent conflict can be reasonably reconciled, "or where one finding is general and the other specific; or even where one finding is duplicitous, or ambiguous, and the other is definite and specific, a judgment may properly be entered thereon." Howard v. Howard, Tex. Civ.App., 102 S.W.2d 473, 475 (writ ref.) "It is the duty of the courts to construe verdicts as not irreconcilably conflicting when there is any reasonable explanation of seeming conflicts." Bragg v. Hughes, Tex.Civ.App., 53 S.W.2d 151, 153. "All the issues must be considered together as a whole. If, when construed as a whole, they admit of more than one reasonable construction, the trial court has power to apply that reasonable construction which he deems proper." Texas Indemnity Ins. Co. v. Bridges, Tex.Civ.App., 52 S.W.2d 1075, 1079 (writ ref.).

■ Appellant's only objection to the court's charge reads: "Plaintiff objects and excepts to the submission of special issue No. 3 for the reason that as it stands it places too great a burden upon the plaintiff, and says that said special issue should instead submit the question as to whether the injury, if any, was a producing cause of the death of Ben Lewis." Both in motion for new trial and in brief, it is contended that issue 3, as framed by the court in light of accompanying definitions, placed the undue burden on plaintiff of requiring the jury, on affirmative answer, to find (a) that the injury to Lewis was the sole proximate cause of death; or (b) was a proximate cause of death. However, the objection leveled at aforesaid charge merely complained that issue 3, in form, should have inquired of the jury "as to whether the injury, if any, was a producing cause of the death of Ben Lewis." The wording "naturally resulted in," or similar phraseology, has often been approved as a part of claimant's primary issue establishing causal connection; see article of Mr. Preston Shirley, 18 Texas Law Review, 365. It is but an alternative for "producing cause"; the latter term being commonly defined as "such as naturally resulted" in the particular incapacity or death; Travelers Ins. Co.

v. Johnson, Tex.Civ.App., 84 S.W.2d 354; Strong v. Aetna Cas. & Surety Co., Tex. Civ.App., 170 S.W.2d 786.

■■ Clearly, appellant goes beyond the scope of above quoted objection in the present contentions that the court has erroneously defined the term "naturally resulted"; and, also, in the definition of "personal injury," as not including the element of aggravation of injury by reason of pre-existing disease. The charge was not objected to in these particulars until after verdict and judgment. Under Texas Rule of Civil Procedure 279, appellant is in no position to complain of the matters presented in points 2 to 5 inclusive. "Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of a judgment unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment." Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, 313.

■ Portion of a letter written by Dr. Waddell to the Industrial Accident Board reciting case history given by Ben Lewis was excluded, but the ruling, if error, was harmless, for (a) the jury, in fact, found that an injury had been sustained; (b) the rejected matter was merely cumulative of prior testimony of the witness Teabern Jones; (c) the same facts were later testified to by the witness over defendant's objection.

■■ At the time Dr. Gilbert testified on behalf of plaintiff, defense objection had been sustained to the autopsy report attached to the deposition of Dr. Bell, but signed by Dr. Griffin; though a copy of the report duly signed by Dr. Bell was afterwards admitted without objection. Such ruling did not unduly restrict plaintiff in the propounding of hypothetical question to Dr. Gilbert, such witness stating that he was already familiar with the report of autopsy, his answers taking into consideration the information gathered from that instrument. Neither is reversible error shown in the court's exclusion from the same hypothetical question the statement "and it appears from this autopsy that the man's appendix was involved . * * * at the time of the accident." After answering plaintiff's basic question, Dr. Gilbert testified rather fully, over defendant's objection, stating his assumption that the appendiceal condition of Lewis had been of long development and that plaintiff's question in chief included all facts necessary to form such opinion.

The foregoing points of error, having been fully considered, are overruled, with the result that the judgment of the trial court must be affirmed.

LOONEY, J., dissents.

BOND, Chief Justice.

I am in accord with the conclusion that there is no conflict in the jury findings. However, irrespective of the findings, I am of the opinion that the facts do not warrant a reversal; but, on the other hand, this record requires an affirmance.

LOONEY, Justice (dissenting).

My dissent is from the disposition of the case made by the majority. The opinion by Associate Justice Young correctly states the case. I am in accord with the majority in overruling appellant's first point of error contending that the verdict of the jury is in irreconcilable conflict; also, in overruling appellant's fifth, sixth, seventh, eighth and ninth points of error, complaining of the rulings of the trial court on evidence. However, I think the majority erred in attaching to the jury's answer to special issues numbers 3 and 4, a meaning and significance not warranted when the definitions given by the court are considered.

Appellant alleged that "the stand hit the steps and caused it to strike him, the said Ben Lewis, in the stomach, which produced an injury to his abdomen and stomach injuring his appendix, which caused an abscess to form, which said abscess caused his death on or about the second day of January, 1945." (Tr. p. 3.) Appellee's answer, among other things, contained the following: "Defendant specially denies that the said Ben Lewis received any accidental injuries in the scope of his employment and, in this respect, would show to the court that his death resulted from natural causes entirely separate, independent of, and in no

way connected with his employment by A. A. Greer." (Tr. p. 10.)

The evidence shows that immediately upon receiving the blow to his abdomen, Lewis dropped the mortar stand, held his side, seemed to be in pain, ceased work for a few minutes and, although worked the remainder of the day, did not return to work, complained of pain in his side, soon took to his bed, and died January 2, 1945, 17 days after receiving the injury; the autopsy showed that he died from a ruptured or abscessed appendix. The record fails to disclose that death could have resulted from an unknown cause. So, as revealed by the record, pleadings and evidnce, Lewis's death resulted either from the accidental blow to his abdomen that aggravated a slumbering appendix trouble which, becoming immediately and progressively violent, resulted in death 17 days later; or, that death resulted solely from "natural causes entirely separate, independent of, and in no way connected with his employment by A. A. Greer," as alleged by the appellee.

Appellant's theory, in my opinion, was supported by a preponderance of the evidence; not only the immediate circumstances connected with and following the injury, but the medical testimony also, preponderated in favor of this theory. Dr. Bell, who performed the autopsy, testified, in substance, that he found a chronic appendiceal abscess that had existed from one to two weeks, probably longer; that a blow could have caused a rupture; that it was probable that deceased's appendix was involved at the time he received the injury and that the blow produced perforation. Dr. Griffin, who assisted in the autopsy, described the condition that was found and expressed the opinion that deceased had an appendix trouble at the time he received the injury; answering a hypothetical question, the witness said that the blow could have been a producing cause of Lewis's death. Dr. Gilbert, answering a hypothetical question, expressed the opinion that the blow to the abdominal area ruptured the affected appendix, causing death.

In view of the status of the written pleadings and of the evidence, it became the duty of the court to submit "the controlling issues made by the written pleading and the evidence" (Rule 279), which, in my opinion, the court failed to do; and that, by reason of such failure, the jury was deprived of an opportunity to pass directly and specifically upon the merit of appellant's contention; instead, the court submitted special issue No. 3, as follows: "Do you find from a preponderance of the evidence that such injury, if any you have found in answer to special issue No. 1, naturally resulted in the death of Ben Lewis?"

In order to understand what was comprehended in issue No. 3, and the significance of the answer of the jury to same, we must read into it the definitions the court gave of the term "'injury" and the phrase "naturally resulted," employed by the court in the issue. The court defined "injury" as follows: "You are instructed that the term 'injury' or 'personal injury,' as used in this charge, refers to and means damage or harm to the physical structure of the body, sustained accidentally, and such disease or infection as naturally resulted therefrom;" also, defined "naturally resulted" as follows: "You are instructed that the term 'naturally resulted,' as used in this charge, means according to the ordinary course of events, according to nature, spontaneously." The common acceptations of the term "spontaneously," used by the court in the definition of the term "naturally resulted," as stated by Webster, are: "proceeding from or acting by internal impulse, energy, or natural law, without external force; self-acting; synonymous with the term 'automatic,'" and, as stated by Funk & Wagnalls: "arising from inherent qualities or tendencies without external efficient cause, especially without constraint or coercion * * * not having material causation outside of itself; self-generated."

It is obvious that in answering issue No. 3, the jury was compelled to consider and apply the definition of "naturally resulted" in two connections, that is, to the term "injury" and to the cause of death. Issue No. 3, clothed with these definitions and transformed, would read substantially as follows:

Do you find from a preponderance of the evidence that such injury-damage, or harm to the physical structure of the body, and

such disease or infection as naturally resulted therefrom, that in the ordinary course of events, according to nature and spontaneously, naturally resulted in the death of Ben Lewis, that is, in the ordinary course of events according to nature, spontaneously?

The issue thus transformed, in my opinion, was tantamount to asking the jury whether or not the death of Lewis resulted solely from the accidental injury sustained. As thus understood, the jury, in my opinion, correctly answered the issue in the negative. However, I dissent from the view of the majority that the answer of the jury to this issue entitled appellee to judgment; on the contrary, in view of the issues made by the written pleadings and the evidence, I think judgment should have been rendered for appellant on the explicit findings of the jury augmented by an inescapable implication resulting from these findings. As disclosed by the record, the jury found that deceased was injured in the course of his employment; and, for reasons heretofore stated, I think their answer to issue No. 3 was tantamount to a finding that his death did not result solely (spontaneously) from the injury; and, in answer to issue No. 4, the jury found that death did not result solely from disease (diseased appendix). There being no suggestion of death from an unknown or undisclosed cause, the findings of the jury excluded every other probable cause of death except the real cause which, in view of the explicit findings made, obviously was in the mind of the jury; that is, that the accidental blow sustained by deceased to his abdominal area injured and aggravated a pre-existing affected appendix which, becoming progressively worse, ruptured and, 17 days later, resulted in Lewis's death. On the authority of Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, presenting a very similar situation, I think judgment should have been rendered in favor of the appellant.

Appellant objected to special issue No. 3 "for the reason that as it stands, it places too great a burden upon the plaintiff, and says that said special issue should instead submit the question as to whether the injury, if any, was a producing cause of the death of Ben Lewis." To the action of the court in overruling this objection, appellant urges several points of error, among others, Fourth Point, as follows: "The error of the court, in this, a compensation case, inquiring of the jury if such injury (defined as harm to the physical structure of the body and such diseases or infection as naturally result therefrom) resulted in death, since submission in this form entirely precludes the idea of death from injury that aggravates a pre-existing disease."

This point of error, in my opinion should have been sustained. It is true the objection is rather general, but, obviously, it had a meaning and suggested to the trial court wherein the issue placed too great a burden upon appellant, in that, before obtaining a favorable verdict, she was required to show that the death of Lewis resulted from the injury; that is, damage or harm to the physical structure of the body and such disease or infection as naturally (spontaneously) resulted therefrom; whereas, she was only required to show that the accidental injury aggravated a pre-existing disease or affected appendix, and that death resulted from the combined effect of both the injury and the pre-existing disease. The issue submitted (No. 3), was not the issue made by the pleading and supported by the evidence.

I do not think any significance should be given to appellant's failure to prepare in writing and request the submission of an instruction as to whether the injury was a producing cause of death, as required by Rule 279, as such failure would not detract from the force and effect of the affirmative objection to the erroneous charge.

I also dissent from the view of the majority that the phrase "naturally resulted," as defined, is equivalent to and synonymous with the phrase "producing cause," or similar phrases. The cases cited by the majority in support of their idea in this respect, in my opinion, are not in point, for the reason that in neither of the cases was the phrase "naturally resulted," or similar phrases, defined, as in the instant case;

nor was the term "spontaneously," or an equivalent, employed as in the instant case, which, in my opinion, differentiates this case from the cases cited.

However, if in error in the conclusions heretofore announced, in the alternative, I think that owing to the confusion and uncertainty resulting from issue No. 3, considered in connection with the erroneous and misleading definitions of the term "injury" and the phrase "naturally resulted" given by the court, that, without resorting to conjecture, judgment cannot be entered in favor of either party on the verdict of the jury; hence, that the judgment in favor of appellee should have been set aside, a new trial ordered, and the cause remanded for further proceedings. See West Lumber Co. v. Keen, Tex.Com. App., 237 S.W. 236; Maryland Casualty Co. v. Howie, Tex.Civ.App., 94 S.W.2d 220 (error dism.).