**PACIFIC INDEMNITY CO. v. ARLINE.**

**No. 4506.**

Court of Civil Appeals of Texas. Beaumont.

April 22, 1948.

Rehearing Denied July 21, 1948.

Second Rehearing Denied Oct. 6, 1948.

1946, while attempting, during the course of his employment, to lift and empty a heavy steel barrel, he severely strained his side and back; and was then and there totally incapacitated by reason of his injury to work and earn money; and further, that this incapacity, so caused, had continued to exist since the injury occurred, and would exist for a period of 145 weeks from the date of said injury. He also alleged an impairment of vision in his left eye, accompanied by headaches, but he abandoned these allegations on trial, admitting that he sustained no injury to his eye while he was employed by the aforesaid employer. He prayed recovery of compensation benefits under the Workmen's Compensation law for the aforesaid period of 145 weeks.

Insurer filed a general denial and three special pleas by way of defense: (1) That any disability employee had on April 16, 1946, and since was "solely the result of disease, physical defects, or other causes, not in any way connected" with any accidental injury alleged by employee; or (2), in the alternative, that if employee sustained an injury on April 16, 1946, resulting in compensable disability this disability terminated not later than 12 weeks after said date, and any subsequent disability was solely the result of other, non-compensable disease, physical defects or other causes; or (3), still further in the alternative, that any disability employee may have had after April 16, 1946, was only partially caused by accidental injury and, to the extent thus caused, was temporary, and that the balance of employee's disability was the sole result of other, non-compensable disease, defects or causes.

The action was tried to a jury, and on their verdict, the trial court rendered judgment in employee's behalf, as prayed for by him. Insurer has appealed. We make the following additional statement from the record as a basis for our judgment:

The trial court submitted the issues of injury and incapacity to the jury by the following definitions and special issues:

"You are instructed that wherever the term 'injury' or 'personal injury' is used in this charge, same shall be construed to mean damage or harm to the physical

Strong, Moore & Nelson, of Beaumont, for appellant.

Fauer & Barnes, of Jasper, for appellee.

WALKER, Justice.

This is a workmen's compensation case. The employee is Ruby Arline. The insurer is Pacific Indemnity Company. The employer is Consolidated Steel Corporation.

Employee brought the action as an appeal from an award of the Industrial Accident Board. He alleged that on April 16,

structures of the body and such diseases or infection as naturally result therefrom.

\*     \*     \*     \*     \*     \*

"The term 'injury sustained in the course of employment' as used in this charge, shall not include: 1. An injury caused by the act of God \* \* \*. 2. An injury caused by an act of a third person intended to injure the employee because of reasons personal to him \* \* \*. 3. An injury received while in a state of intoxication; 4. An injury caused by the employee's willful intention and attempt to injure himself, or \* \* \* some other person.

"But said quoted phrase shall include all other injuries of every kind and character having to do with and originating in the work, business, trade, or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon employer's premises or elsewhere.

\*     \*     \*     \*     \*     \*

"You are instructed that as a matter of law in this case the plaintiff did not receive any injury to his eye on April 16th, 1946, and further that the plaintiff sustained no disability in his eye that was in any way caused by an injury received in the course of his employment for Consolidated Steel Corporation.

You are instructed that the phrase 'total incapacity' as used in the Court's charge does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated.

"By 'partial incapacity' is meant such incapacity as prevents one from performing some of the duties of an ordinary workman —in other words, any disability less than 100%.

"By the term 'accidental injury' as used in this charge is meant one of a calamitous nature, happening by chance, or unexpectedly, and taking place not according to the usual course of things.

\*     \*     \*     \*     \*     \*

"(Issue 1): Do you find from a preponderance of the evidence that Ruby Arline sustained an injury on or about April 16, 1946? Answer: Yes.

"(Issue 2): Do you find—that said injury, if any, was an accidental injury? Answer: Yes.

"(Issue 3): Do you find—that the injury, if any—was sustained by Ruby Arline because of emptying a garbage barrel into a truck? Answer: Yes.

"(Issue 4): Do you find—that said injury, if any—sustained by Ruby Arline, was an injury sustained in the course of his employment for Consolidated Steel Corporation? Answer: Yes.

"(Issue 5): Do you find—that said injury, if any—sustained by Ruby Arline, *resulted in* total incapacity? Answer: Yes.

"(Issue 6):—when did that total incapacity, if any—begin? Answer: April 16, 1946.

"(Issue 7):—how many weeks of such total incapacity, if any, do you find was sustained by Ruby Arline, from and after the beginning date—? Answer: Yes. 145 weeks.

"(Issue 8): Do you find—that said injury, if any, sustained by Ruby Arline, *resulted in* any partial incapacity to work? Answer: No. Totally disabled.

"(Issue 12): Do you find—that Ruby Arline worked in the same or similar employment, in the same or neighboring place, working at the time of the injury in question, as much as, or close to, or nearly three hundred days of the year just before April 16, 1946? Answer: Yes.

"(Issue 14): Do you find—that Ruby Arline's incapacity, if any—, is not due solely to disease? Answer: It is not due solely to disease.

"(Issue 15): Do you find—that the incapacity of the plaintiff, if any—is not due solely to physical defects or other causes disconnected with the injury, if any, alleged to have occurred on April 16, 1946, if any? Answer: It is not due solely to physical defects or other causes disconnected with said injury alleged to have occurred on April 16, 1946."

The jury's findings under these issues were based upon the following proof:

(a) Employee is a negro man. On April 16, 1946, he was (as he had been for over a year before) a member of a four man crew whose duty it was to go about employer's yard at Orange, Texas, with a truck, and to collect and carry away in this truck the daily accumulation of refuse which was an incident of employer's ship-building operations. This refuse was placed in barrels by other persons, and employee and his crew were required to empty these barrels into their truck and subsequently, to unload this truck at a certain place. The barrels referred to were made of steel and had a capacity of 50 or 55 gallons. The waste which was placed in these barrels consisted, in part, of steel fragments, and the barrels were usually full of waste and were very heavy. Shortly before noon on this day, April 16th, employee and his crew were engaged in collecting the waste and refuse from these barrels, and two members of the crew, standing on the ground, lifted one of these barrels and with some assistance from employee and the fourth man, Booker Reagan, who were standing in the truck, placed this barrel on the truck bed where employee and Reagan could empty it. Curtis Wilson, one of the men standing on the ground, thought that this barrel weighed 155 or 200 pounds. Employee stooped to lift the barrel in order to empty it, and while making the effort required to do this, he suddenly experienced a severe pain in his right side and back which caused him to drop the barrel. He said: "It hurt me in my side and back and I dropped down and dropped the barrel."

Employee was immediately and totally incapacitated by reason of this pain (evidencing a severe muscular strain, according to his theory of the facts) to perform physical labor. His co-employees conveyed him in the truck to a place referred to as the "nail shed," and there is evidence that he required assistance to leave the truck. The pain continued, unabated in severity, and shortly after employee arrived at the "nail shed," apparently just after the noon meal, in which employee did not participate, employee's crew carried him in their arms to a First Aid station on employer's yard, and from that place he was conveyed on a stretcher, in an ambulance, to a hospital in Orange, where he was placed in the emergency room and came under the treatment of Dr. L. O. Thompson, apparently very soon after arriving. There was evidence that men at the First Aid Station carried employee in their arms to the ambulance. There is also evidence that employee suffered great pain in the lower part of his abdomen and back during all this period.

(b) Employee remained about three days in the hospital under Dr. Thompson's care, leaving on the 18th (according to Dr. Thompson; employee said he stayed five days) and returning to his home. He reported to employer for work on April 29th or 30th, but soon discovered that he could not perform his duties because, he said, of a recurrence of the pain he had had on April 16th, and he was on that day recommitted to the hospital for further treatment by Dr. Thompson. He remained in the hospital until May 5th, when he was discharged and returned home. He reported for work soon after and found, he said, that he had been discharged from employment.

A day or so prior to May 15, 1946, not quite a month after the incident of April 16th and about a week after his discharge from the hospital, employee went to Dr. C. B. Shaddock for treatment of an infected jaw, and he received treatment from this physician, and later from a Dr. Bennett (who did not testify) until about June 23, 1946, when he entered John Sealy Hospital in Galveston. He was hospitalized twice in Orange while under the care of Dr. Shaddock and Dr. Bennett, first for treatment of the infection in his jaw and again, for a recurrence of this infection which, in the meantime, had extended to his eye and had become so dangerous as to threaten his life. (Employee refers only to one hospitalization, of about three weeks, by Dr. Shaddock but the variance noted is immaterial.)

Employee was discharged from John Sealy Hospital on September 1, 1946. While there he received treatment for the jaw and eye infection but the progress of the disease required the removal of his right eye. All of his teeth were removed

as well, not long before this cause was tried.

During the period intervening between the occurrence of pain on April 16th and employee's discharge from John Sealy Hospital and his return home from that place, employee received no treatment for the muscular strain which, according to his theory of the facts, he sustained while he was lifting the steel barrel on April 16th. Dr. Thompson treated him only for pleurisy. Dr. Shaddock and Dr. Bennett treated him only for the infection in his jaw and eye, and this infection was apparently the subject matter of the treatment he received in John Sealy Hospital. On December 7, 1946 (according to Dr. Seale but during September according to employee), employee went to Dr. James N. Seale, apparently for treatment of the muscular condition resulting from the strain employee says he received on April 16th while lifting the barrel. He says, at least, that he told Dr. Seale of the pain in his side, or abdomen, and back, which he says he has always had in some degree since the incident of April 16th, and that Dr. Seale prescribed some medicine, and some plasters for his back. Later, about a month before the trial of this cause (trial began on July 17, 1947), he went to Dr. Dickerson, and this physician also prescribed medicine, and "some things" to put on his back.

(c) The basic issue between the parties on the proof respecting injury and disability was precisely the question, whether employee sustained any compensable disability as a result of the incident of April 16th, and his lifting the steel barrel.

Insurer's evidence tends to prove that employee sustained no compensable disability whatever as a result of this incident, and that employee is not now disabled to work, except, perhaps, as an incident of the loss of his right eye. This evidence, to which we shall now briefly refer, was adduced from two of employee's physicians, Drs. Thompson and Shaddock.

Dr. Thompson first saw employee on April 16th, while employee was yet in the hospital emergency room, and he testified that employee was then suffering from pleurisy, with a "very high temperature,"

that employee was in pain, and that employee's condition was serious. Dr. Thompson treated employee with penicillin. When employee returned to the hospital on the 29th (30th), Dr. Thompson found employee still suffering from this pleurisy. He testified positively that this pleurisy must have existed for 24 to 48 hours before the time employee said he lifted the barrel, and Dr. Thompson denied, as positively, that a muscular strain such as employee says he received could have caused pleurisy. (We note. that Dr. Shaddock supported him here.) He said that employee did not tell him of any muscular strain until placed in the hospital the second time, that employee only complained to him of a chest pain, and that he had heard nothing of a back injury until the cause came on for trial. He thought that employee was all right when discharged from the hospital the second time, and testified that pleurisy usually was cured in three or four weeks, unless complications appeared—and he knew of no complications in employee's case. He had examined employee on May 26, 1947, about a year after employee had left his care, and he said that the pleurisy was then cured, and he said further that he found nothing wrong with employee's chest or back. He declined without examining employee to say on trial (which began on July 17th, about seven weeks after his last examination of employee) whether employee was then able to work, but did say that so far as X-rays taken on May 26th showed, employee was able to work.

Dr. Shaddock attached no more significance to muscular strain in treating employee than did Dr. Thompson. He testified that employee came to him for treatment of an infected jaw, that he placed employee in a hospital and treated him (with penicillin) for this condition, that after employee was discharged from the hospital, the infection recurred and spread to employee's eye and employee returned to him for treatment of this condition ("his right eye was standing out two or three inches—just like it was sticking out on a stem and I immediately hospitalized him"); that he again placed employee in a hospital and treated him for this infection, eventually

calling in Dr. Bennett; and he and Dr. Bennett finally caused employee to be transferred to John Sealy Hospital in Galveston for further treatment of this infection because methods and facilities of treatment were available there which he and Dr. Bennett could not provide. It was his opinion that this infection resulted *from an abcessed tooth*. Employee had told him of some kind of a chest trouble or injury, but this information had not entered in the slightest into his conclusions regarding the nature, cause, progress or treatment of employee's jaw and eye infection; and he remembered nothing of any back injury. ("I don't remember discussing a back injury. I wasn't at all interested in it. He didn't come to me with a back injury. He came to me with a swollen jaw.") He testified, regarding the disabling effect of the particular illness he did treat:

"Q. From the condition you saw this boy in, state whether or not, Doctor, he was seriously disabled, whether or not he had any back strain? His jaw and his eye were sufficient to disable him, weren't they? A. I thought he was going to die from this thing. He had a very severe aenemic condition and we gave him a number of transfusions. His blood was a way down— around fifty."

We need not summarize the conflicting testimony regarding various claims for unemployment benefits and personal insurance filed by or on behalf of employee.

According to Dr. Thompson's and Dr. Shaddock's testimony, any muscular strain which employer may have suffered on April 16th was without significance. Dr. Thompson, indeed, thought that the pain which employee said occurred while he was lifting the barrel, was of no moment. After expressing the opinion that the pleurisy antedated the incident of April 16th, he testified:

"Some times there are adhesions formed and I can see— I can see how if he had that, in picking up something he might have pulled one of those loose and caused severe pain.

"Q. How long would that have lasted? A. Not more than an hour or two. Usually just a few minutes."

(d) Employee's proof, however, tends to show that until April 16, 1946, employee was fit and able to do his work, but that on said date he suffered a severe muscular strain which totally incapacitated him at that time as hereinbefore stated, that if he had any pleurisy this pleurisy was but an incident of the strain, and that the jaw infection for which Dr. Shaddock treated him was without any significance (except, perhaps, as it may have delayed his recovery from the strain) because he was already totally incapacitated by the strain when the infection developed and, since April 16, 1946, has been continuously incapacitated by virtue of the aforesaid strain regardless of any debilitating effect his disease may have had.

Such evidence as there is on the point shows that the jaw infection developed after the incident of April 16th, probably, indeed, after or about the time employee was discharged from the hospital on May 5th. There is no evidence whatever that this disease originated in the incident of April 16th; employee's theory is squarely to the contrary. Employee repudiates the disease, and on trial admitted that he sustained no injury to his eye during the course of his employment with employer. This admission was called to the jury's attention by an instruction during the course of the trial and by a special charge (quoted above) in the trial court's charge to the jury.

Employee was an uneducated negro (he could not read), a common laborer, unskilled, apparently, in any trade. He had been at work regularly, earning his livelihood, since he was 14 years old (and he was about 44 years old on April 16, 1946). On trial he referred to various sorts of labor he had done before entering the employ of Consolidated Steel Corporation, some of it obviously heavy (worked for the railroad, for housebuilders and for sawmills, had cut logs). He was employed by Consolidated in 1943, apparently during the month of June, and after performing various duties (collecting bottles, and paper, stacking lumber, "first one thing and another") he was assigned to work as a member of the crew who operated the truck used to collect refuse and waste. He was en-

gaged in this particular employment for at least a year before April 16, 1946.

Prior to that day, April 16, 1946, employee had been well and strong, able to do the work required of him—and this was hard work. He had had no serious illness, had suffered no accidental injury (reference is made to a strain in September, 1945, but no point was made of this by Insurer, and no disability therefrom was proved), had made no claim for compensation benefits, had had no accidental injury to his lower abdomen and back nor any pain in those regions, where he experienced pain on April 16th. He had worked regularly since the age of 14 years, and while at Consolidated. Two members of the crew with whom he was working on April 16th, one having been with him on that job for a year and the other for some four or five months, said that he had worked regularly on that job, doing what was to be done, without complaint of pain or otherwise. He testified that he had worked for more than 300 days during the year immediately preceding April 16th, and we note that the jury so found under Issue 12, quoted above. He was given, and obviously passed, a physical examination before employed by employer.

Employee now feels and since April 16, 1946, has experienced in his side, or lower abdomen, and back a sensation of pain, which prevents his doing any physical labor. According to employee he had been totally incapacitated since the incident of April 16, 1946.

Employee adduced testimony from two of his physicians, Dr. Seale and Dr. Dickerson, which expresses his theory of injury and disability. Dr. Seale said that he first examined employee on December 7, 1946 (during September, according to employee), and found him to be suffering from "pleurisy on his right side, which I thought due to some fracture of the 10th and 11th right ribs; and muscle strain of the upper abdominal muscles; and dislocation and strain of the sacro-iliac joints." He had seen employee four times, last on July 5, 1947, 12 days before trial, and on this last occasion, found no appreciable improvement in employee's condition (employee's back stiff, complaint of pain in right chest and upper right abdomen). He thought that employee was totally incapacitated when he first saw employee and had been since, and that this incapacity would continue 145 weeks from April 16, 1946. He thought that the muscular strain of April 16th—and not disease—was the cause of employee's condition, and he testified further:

"Q. Doctor, I will ask you to state whether or not you are basing your opinion on his disability of working due to his condition in his abdomen, and back, and that alone? A. That's right."

Dr. Dickerson had first examined employee in May, 1947, and had seen him three times. On his first examination he found "a pleurisy condition in his right chest. (Employee) was also suffering from a low back strain on his lower right side." He was satisfied that employee was not simulating this low back strain. He said, "The condition I found his back in would cause him pain and discomfort;" and further, that "I believe this boy's injury occurred there on the date (April 16th) mentioned." He thought that employee was totally incapacitated, and that this condition would endure 145 weeks from April 16, 1946.

We may now discuss Insurer's Points of Error, all of which refer to the form of the trial court's charge to the jury. None of the jury's findings have been attacked.

Under Points 1, 2, 3, 4, 5, 6 & 7, Insurer assigns error to the trial court's method of submitting the fact issue of causation, that is, whether the injury referred to in Issues 1, 2, 3 & 4 caused the disability referred to in Issues 5 and 8 (and subsidiary issues). This fact issue of causation was put directly to the jury nowhere else than in Issues 5 and 8 (other Issues referring to disability were subsidiary), and in Issues 5 & 8, only by the term "resulted in." To repeat, for convenience, Issue 5 reads: "Do you find—that said injury, if any—sustained by Ruby Arline, *resulted in* total incapacity? Answer: Yes." The term "resulted in" was not defined, and it is this lack of definition which constitutes the subject matter, or lies at the bottom, of all of the points now

under consideration except Point 6, which involves a requested charge defining "producing cause." Insurer says that the testimony of Drs. Thompson and Shaddock raised the issue that all, or nearly all, of Employee's disability occurring after the incident of April 16, 1946, was caused by disease acting as an independent agency within the meaning of Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200, and that to avoid a misunderstanding regarding a material matter of recovery and defense, the necessity of excluding such disability ought to have been communicated to the jury. Insurer says further that "resulted in," undefined, did not accomplish this result and that the term should have been so defined as to instruct the jury that to be a cause of the disability, the injury must have produced the disability thru a natural and continuous sequence unbroken by any new and independent cause, and must be that without which the disability would not have occurred.

Point 6 assigns error to the trial court's refusal to give Insurer's requested charge No. 3, defining "producing cause." Since the term "producing cause" does not appear in the trial court's charge, nor in any Special Issue requested by Insurer, the trial court did not err in refusing to define it, and Point 6 is accordingly overruled.

Points 1, 2, 3, 4, 5 & 7 are also overruled. Whether "resulted in" should have been defined depends upon whether the jury were able, without the definition, to "properly pass upon and render a verdict" on the Special Issues submitted to them, Texas Rules of Civil Procedure, Rule 277, and this they could do on this record.

An employee's proven injury must, of course, be a legal cause of his proven disability if the disability is to be compensable under the Workmen's Compensation Law, and if this matter of causation is a fact issue, as is true here, it must be submitted to the jury for their determination. However, we note that Issues 5 and 8 submit this fact issue of causation in terms used in the statute. Employee's right to compensation for total or partial inca-

pacity depends upon Subdivisions 10 and 11, respectively, of Art. 8306, R.S.1925, as amended Vernon's Ann.Civ.St. art. 8306, §§ 10, 11, and each of these subdivisions provides that "While the incapacity * * * *resulting from* the injury is (total or partial)" the employee shall be paid a certain percentage of his average weekly wage, not to exceed $25 per week. Indeed, the Workmen's Compensation Law expresses the necessary causal relation between injury and disability by various forms of the word "result" in almost every instance, but we may confine our remarks to Subdivisions 10 and 11, aforesaid.

The words "resulting from" in Subdivisions 10 and 11 refer only to causation in fact; the requirement is that the injury be a substantial factor in bringing about the disability, something without which the disability, would not have occurred. Thus, in Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026, the Commission of Appeals held that the injury need only be one of several causes, as distinguished from the sole cause, of the disability. And it is held that a pre-existing disease is no defense to a claim for compensation unless it be the sole cause of the disability, Texas Employers Ins. Ass'n v. Parr, Tex.Com. App., 30 S.W.2d 305; that aggravation of an injury by a subsequent disease which is not caused by the injury is not a defense in bar, Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356; Texas Indemnity Ins. Co. v. Dean, Tex.Civ.App., 77 S.W.2d 748; but that a disability caused solely by a subsequent disease which, itself, is not caused in fact by the injury is not compensable. Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200. In Travelers' Ins. Co. v. Peters, Tex.Com. App., 14 S.W.2d 1007 (judgment set aside on other grounds at Tex.Com.App., 17 S.W. 2d 457, Mo.Reh. Overruled Tex.Com.App., 18 S.W.2d 590), the Commission of Appeals held that the injury need not only be a "producing cause" of the disability as distinguished from a "proximate cause" thereof, and every definition (including Insurer's) we have seen of "producing cause," a term which has been frequently used, expresses only causation in fact.

See: Texas Employers' Ins. Ass'n v. Burnett, Tex.Civ.App., 77 S.W.2d 742, Rev. on other grounds 129 Tex. 407, 105 S.W.2d 200; Travelers Ins. Co. v. Johnson, Tex. Civ.App., 84 S.W.2d 354; Safety Casualty Co. v. Walls, Tex.Civ.App., 117 S.W.2d 879; Texas Employers Ins. Ass'n v. Hitt, Tex.Civ.App., 125 S.W.2d 323; Southern Underwriters v. Dumas, Tex.Civ.App., 130 S.W.2d 938; Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026; Texas Employers Ins. Ass'n v. Watkins, Tex.Civ.App., 135 S.W.2d 296; Traders & General Ins. Co. v. Davis, Tex.Civ.App., 147 S.W.2d 908, WOJ-CJ, 136 Tex. 187, 149 S.W.2d 88; Traders & General Ins. Co. v. Turner, Tex.Civ.App., 149 S.W.2d 593; Texas State Highway Dept. v. Butler, Tex.Civ.App., 158 S.W.2d 878; Jones v. Traders & General Ins. Co., 140 Tex. 599, 169 S.W.2d 160; Strong v. Ætna Casualty & Surety Co., Tex.Civ.App., 170 S.W.2d 786; Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312; Liberty Mutual Ins. Co. v. Murphy, Tex.Civ. App., 205 S.W.2d 398; and see: Lewis v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 197 S.W.2d 187.

The idea of causation is plainly expressed by the dictionary definitions of the verb "result" and of the noun "result." The verb is defined as meaning: "to proceed, spring, or arise, as a consequence, effect, or conclusion; to come out, or have an issue; followed by *from* or *in;* as this measure will result in good." The following words are synonyms: "Proceed, spring, rise, ensue, follow." The noun "result" is defined as meaning "that which results, as a consequence, effect, issue, or conclusion." These words are synonyms: "Consequence, conclusion, end, issue, event;" and these words are antonyms: "cause, source, origin, beginning." Webster's International, 2nd Ed. Unabridged.

The sense of these definitions is what the jury got in Issues 5 and 8 and thus the jury were required to find a causal relation between claimed injury and claimed disability. No reason appears for otherwise defining the words "resulted in" used in Issues 5 and 8 unless there is something in the evidence which might have caused the jury to misapply "resulted in," either by reason of some rule of law which they did not know (because no definition was given) or because the dictionary definition did not express the idea of causation in fact with sufficient clarity. See: Rule 277; Robertson & Mueller v. Holden, Tex.Com.App., 1 S.W.2d 570.

Our statement above of various rules of decision shows that there was no such rule of law. Under employee's theory of the facts, he had at the time of trial a physical disability which was solely caused by the incident of April 16, 1946. According to Insurer's evidence, employee was not disabled at the time of trial and whatever disability he suffered on and after April 16, 1946, was caused solely by diseases which were not caused by the claimed injury. The choice between these two theories, and the causal relation between employee's claimed injury and his claimed disability were plainly enough put to the jury by the quoted dictionary definitions. If there is any evidence that the pleurisy which Dr. Thompson said he found on April 16, 1946, was caused or was activated by the strain employee says he sustained on that date, this evidence raised no defense in Insurer's favor; nor would an inference that the jaw and head infection had aggravated the strain and delayed the healing thereof. If it may be inferred that the pleurisy of April 16th and the subsequent jaw and head infection were independently capable of disabling employee, the evidence raising this inference presented no defense for Insurer because employee, according to his theory of the facts, was at the same time independently disabled by his strain. He says that his back and side, or abdomen, have pained him since the incident of April 16th, and that he felt no pain before that incident occurred.

These conclusions also demonstrate that we see nothing in the evidence, as distinguished from applicable rules of law, which might lead the jury into a misapplication of "resulted in." There was no likelihood of the jury having attributed effects of the jaw and head infection to the claimed injury; the issues between the parties were too bluntly and sharply drawn. It is held in negligence cases that a defini-

tion of "proximate cause" must refer to and exclude "new and independent cause," where the latter cause is raised by the evidence, but that situation is not analogous to this. For there the necessity of defining the basic term, "proximate cause," may be assumed, because foreseeableness is required; and as best we can determine, it is held that the definition of "proximate cause" must refer to and exclude "new and independent cause" because any definition given ought to be as complete as the fact issues require. See: Blanch v. Villiva, Tex.Civ.App., 22 S.W.2d 490; Dallas Ry. & Terminal Co. v. Stewart, Tex.Civ.App., 128 S.W.2d 443. However, the term "resulting in" refers only to causation in fact and there is not the same necessity, in the first instance, of defining it as there is of defining "proximate cause." Perhaps the relation between an injury and a disease causing the death or disability for which compensation benefits are claimed may be so tenuous that a plain statement of the necessary causal connection is required as this court seems to have thought in Texas Employers' Ins. Ass'n v. Burnett, Tex.Civ.App., 77 S.W.2d 742, and as the Amarillo Court seems to have thought in Zurich General Accident & Liability Ins. Co. v. Wood, Tex.Civ.App., 27 S.W.2d 838; but where the employee rejects disease as a cause of his disability, as he does here, this necessity does not exist. The choice is as plainly indicated to the jury as in cases of pre-existing disease, and there it is held that definitions of "producing cause" which seem the equivalent of the quoted dictionary definitions need not refer to and specifically exclude the effects of a pre-existing disease which Insurer claims to be the sole cause of disability or death. Travelers Ins. Co. v. Johnson, Tex.Civ. App., 84 S.W.2d 354; Texas Employers Ins. Ass'n v. Watkins, Tex.Civ.App., 135 S.W.2d 296.

It thus appears that on this record, the existence of the necessary causal connection between the claimed injury and the claimed disability was adequately submitted to the jury, as against Insurer's objections. We have not referred to the definitions of "injury," and of other terms, and to the special charge excluding eye injury and incapacity therefrom, all quoted above, because this seems unnecessary. But surely, on the proof before us, these instructions, added to the meaning which the jury could be expected to attribute to "resulted in" in Issues 5 & 8 revealed the distinction between legal causation and non-compensable causation by independent agency with such clarity as to fairly present Insurer's theory of the facts.

Insurer cites Zurich General Accident & Liability Ins. Co. v. Wood, Tex.Civ. App., 27 S.W.2d 838 (1st appeal, Tex. Civ.App., 10 S.W.2d 760), as holding that the words "resulting in" are a legal term and must be defined. There death resulted from disease, a disease of the kidney, and the issue on the proof was whether the condition of the kidney was caused by a blow upon employee's back or solely by a pre-existing disease. The causal relation between death·and injury was submitted as it is here in Issues 5 and 8, through the words "resulting in." The Court of Civil Appeals held that "resulting in" had to be defined because it was a legal term. Since the Workmen's Compensation Law expresses the necessary causal relation in death as in disability cases by a form of the word "result," Sec. 8, Art. 8306, R.S.1925, as amended, Vernon's Ann.Civ.St. art. 8306, § 8, this decision might be thought to have some application here.

However, it may be distinguished, for a different fact issue was before the jury there. In that case, since employee died as a result of disease, it was necessary for the jury to trace this disease to the blow upon employee's back for the death to be compensable. Here, employee repudiates disease. In the Wood case, the jury had to connect injury and disease; here, they must reject one of the two, and we have pointed out above that the necessity which might perhaps exist where the claimant seeks to connect the injury with the disease causing death or disability does not exist where the claimant rejects disease as a cause of disability.

The Wood decision was not appealed to the Supreme Court and we decline to follow it insofar as it may have held that "re-

sulting in" was a legal term which ought always to be defined. The opinion in Strong v. Ætna Cas. & Surety Co., Tex. Civ.App., 170 S.W.2d 786, 788, cited by employee, contains a dictum that "'Producing cause' and 'natural result' are not such legal terms as should have been defined," but the Wood decision is not cited. However, there is other authority supporting our conclusion. The noun "result" is the antonym of "cause," and if "cause" need not be defined, then neither need "resulting in" be defined. The Commission of Appeals, in decisions adopted by the Supreme Court, has said in discussing the necessity of defining "proximate cause" and "new and independent cause" that the word "cause" appearing in these two terms was not a legal term which required definition. Southland Greyhound Lines v. Cotten, 126 Tex. 596, 91 S.W.2d 326; Massingill v. Henwood, 138 Tex. 317, 159 S.W.2d 118. It was the view of the Eastland Court of Civil Appeals, three times expressed, that "producing cause" was tautological, was only the equivalent of "cause," and therefore needed no definition. Texas & P. Ry. Co. v. Short, Tex.Civ.App., 62 S.W.2d 995; Safety Casualty Co. v. Walls, Tex.Civ. App., 117 S.W.2d 879; Traders & General Ins. Co. v. Ray, Tex.Civ.App., 128 S.W.2d 80. Texas & P. Ry. Co. v. Short was a negligence case and was overruled on another point in Southland Greyhound Lines v. Cotten, but not on this, and the viewpoint to which we have referred has also been referred to, apparently with approval, by the Commission of Appeals in Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026, and Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, and by this court in Travelers Ins. Co. v. Johnson, 84 S.W.2d 354. We note that in Texas Indemnity Ins. Co. v. Holloway, Tex.Civ.App., 30 S.W. 2d 921, affirmed on other points at Tex. Com.App., 40 S.W.2d 75, the Court of Civil Appeals held that "proximate result" need not be defined, and that in Metropolitan Casualty Ins. Co. v. Woody, 80 S.W. 2d 771, 774, the Court of Civil Appeals held that "there was no error * * * in the court's failure to define the terms 'cause' and 'natural.' These are terms of ordinary signification and require no definition." And in Lewis v. Texas Employers Ins. Ass'n, 197 S.W.2d 187, 188, the Court of Civil Appeals held that the phrase "naturally resulted," which was defined as meaning "according to the natural course of event, according to nature, spontaneously," was synonymous with "producing cause." The definition used in the Lewis case seems the equivalent of the quoted dictionary definitions.

■ We accordingly hold that the words "resulting in" used in Issues 5 and 8 are not a legal term which always needs to be defined, and that the trial court did not err in refusing to define this term here. We need not consider, and we express no opinion, regarding the necessity of a definition under Rule 278 in cases like Zurich General Accident & Liability Ins. Co. v. Wood, and Texas Employers' Ins. Ass'n v. Burnett.

Under Points 8 and 9, Insurer assigns error to the trial court's refusal to submit Insurers' Requested Issues 5 and 6; and under Points 10, 11 & 12, to the form of Issues 14 and 15 of the trial court's charge. These Points may be considered together.

Trial court's Issues 14 and 15 have been quoted. These Issues submit Insurer's 1st Special Plea, namely, that whatever disability employee has was caused by an independent agency and not by the incident of April 16th. In substance, Issue 14 inquires whether employee's incapacity was caused *solely* by disease, and Issue 15, whether it was caused *solely* by physical defects or other causes disconnected with the injury alleged by employee. Requested Issues 5 and 6 are referable to Insurer's 2nd Special Plea, namely, that disability caused by the alleged injury lasted not over 12 weeks and any subsequent disability was caused solely by the aforesaid independent agencies. Requested Issue 5 inquires whether "any *period* of (Employee's) incapacity—was or will be solely caused by disease, physical defects or other causes disconnected" with the alleged injury, and Requested Issue 6 inquires: "How many weeks—do you find—that (Employee's) disability—was *not* solely caused by disease,

physical defects or other causes disconnected" with the alleged injury.

The error assigned in Points 10, 11 and 12 is, in substance, that trial court's Issues 14 and 15 did not submit the element of Insurer's 2nd Special Plea alleging that disability after a period not exceeding 12 weeks was caused solely by an independent agency. Each of these Points is founded upon an objection made by Insurer to the trial court's charge, which the trial court overruled. Point 10 is based upon Objection 17(d), reading "Said Issue imposes a greater burden on this Defendant and does not submit the issue as to whether some of the *period* of disability might be due solely to disease, physical defects, infection or other causes disconnected with the injury." Point 11 is based upon Supplemental Objection 1(b) reading: "Said issue does not properly submit the Defendant's defense in this case as supported by the evidence—as said issue merely asks the jury as to whether Plaintiff's incapacity is or is not due solely to physical defects or other causes disconnected with the injury, if any, alleged to have occurred April 16, 1946, and does not take into consideration any past incapacity, or any future incapacity, that the jury might believe is due solely to physical defects or other causes disconnected with the alleged injury." (We construe this as referring to the *period* of incapacity, not to a fractional part of the incapacity. *Fractional part* is the subject matter of Supplemental Objection 1(d), the second following that quoted, and Obj. 1(d) has not been assigned in any Point of Error.) Point 12 is based upon Supplemental Objection 1(c), reading: "Said issue imposes a greater burden on this Defendant and does not properly submit this Defendant's defense as to whether some of the *period* of Plaintiff's disability—might be due solely to physical defects or other causes disconnected with the injury—alleged to have occurred April 16, 1946, but requires the jury to find that either all of Plaintiff's incapacity is solely due to physical defects or other causes disconnected with the alleged injury, or find none of the disability is so solely caused."

We have quoted most of the relevant Issues submitted to the jury. Trial court's Issues 1, 2, 3, and 4 submitted the question, whether employee sustained the alleged injury. The question of incapacity was submitted in trial court's Issues 5 & 8. Of these, Issue 5 inquired whether the injury resulted in total incapacity, and Issue 8, whether it resulted in partial incapacity. Duration of incapacity was submitted in trial court's Issues 6, 7, 9 and 10. Of these, Issues 6 and 9 inquired as to when the total or partial incapacity began, and Issues 7 and 10, as to the number of weeks said incapacities would endure.

Points 8, 9, 10, 11 and 12 are overruled. All ultimate issues of fact tendered by Insurer's special pleas were submitted to the jury, and Requested Issues 5 and 6 were not in proper form.

Requested Issues 5 and 6 were obviously intended to submit Insurer's 2nd Special Plea, to which we have already referred. This plea, as we have stated, alleged in substance that any disability caused employee by the incident of April 16th was temporary, lasting not over 12 weeks, and that all subsequent disability was caused solely by disease, etc., not connected with the alleged injury. The only defense tendered by this plea is that employee's compensable disability would not endure for the 145 weeks employee alleged that it would endure; the reference to disease, etc., was but an evidentiary allegation, stating Insurer's reasons for denying employee's allegations. The ultimate issue under this defense was precisely the same as that under the petition, namely, how long would the disability caused by the injury exist, and this issue was submitted by trial court's Issues 6, 7, 9 and 10. Further, as regards form, if Requested Issues 5 and 6 be considered together, said Issues constitute at best an indirect submission of the defense tendered by Insurer's 2nd Special Plea when this defense ought, as it was, to have been submitted directly. Considered separately, Requested Issue 5 refers to an evidentiary matter and Requested Issue 6 is but a statement in negative terms of subject matter expressed affirmatively in trial court's Issues 6, 7, 9 and 10. The trial court properly refused to submit Requested Issues 5 and 6, and

trial court's Issues 14 and 15 were not subject to the objections quoted.

The trial court properly overruled the quoted objections made to Issues 14 and 15 of the charge to the jury, not only for the first of the reasons just stated as grounds justifying the refusal of Requested Issues 5 and 6, but also for the reason that Issues 14 and 15 were referable to a different plea, which is inconsistent with that to which the aforesaid objections are referable. These objections were based on Insurer's 2nd Special Plea, or upon that and Insurer's 3rd Special Plea (referred to below). Trial court's Issues 14 and 15 are based upon and are raised by Insurer's 1st Special Plea (sole cause by independent agency), and Issue 14 was certainly raised by the evidence. If Issue 15 was not, Insurer has not complained of the matter.

We have thus far construed Point 11 and its supporting objection as being referable to Insurer's 2nd Special Plea. However, it may be that said Point and objection are referable, instead, to Insurer's 3rd Special Plea. If the error assigned in Point 11 is that Issue 15 of the charge "does not take into consideration" and *fractional part* of "any past incapacity, or any future incapacity, that the jury might believe is due solely to physical defects or other causes disconnected with the alleged injury," then this Point and the supporting objection are referable to Insurer's 3rd Special Plea. As we construe it, this plea alleged that any disability employee may have had after April 16, 1946, was only partly caused by accidental injury, and to the extent thus caused, was temporary, and that the balance of employee's disability was the sole result of other, non-compensable diseases, etc.

If any defense is tendered by this plea it is that employee's compensable disability was partial, not total (employee's being a general injury claim), and (perhaps) that it would not exist as long as employee alleged that it would. The discussion above shows that this matter was put to the jury by trial court's Issues 8, 9 and 10, inquiring whether the disability caused by the injury was partial, and if so, when

did it begin and how long would it last. Insurer makes no point of the absence of any issue fixing the fractional extent of a partial incapacity. Thus Point 11 must be overruled, whether referable to Insurer's 3rd or 2nd Special Pleas.

The following decisions are more or less analogous: Traders & General Ins. Co. v. Herndon, Tex.Civ.App., 95 S.W.2d 540; Maryland Casualty Co. v. Landry, Tex.Civ.App., 147 S.W.2d 290; Maryland Casualty Co. v. Jackson, Tex.Civ.App., 139 S.W.2d 631; Safety Casualty Co. v. Teets, Tex.Civ.App., 195 S.W.2d 769; National Indemnity Underwriters of America v. Cherry, Tex.Civ.App., 110 S.W.2d 115; Southern Underwriters v. Grimes, Tex.Civ.App., 146 S.W.2d 1058; Maryland Casualty Co. v. Abbott, Tex.Civ.App., 148 S.W.2d 465; United Employers Casualty Co. v. Stewart, Tex.Civ.App., 157 S.W.2d 178.

These conclusions dispose of all Points of Error. The trial court's judgment is accordingly affirmed.

### On Rehearing.

Insurer's motion for rehearing is before us.

(1) Insurer says that the fundamental error in the trial court's charge which has been assigned on this appeal is a failure to submit the issue of causation, and is not the failure to define the term "resulted in." Insurer says that on a consideration of the charge with the fact questions raised by the evidence, the charge appears to contain no Special Issue submitting the inquiry, whether injury caused disability, and further, that if such a Special Issue is in the charge, then there is none inquiring how long that very disability (caused by injury), and none other, endured.

(2) We disagree with Insurer's construction of the trial court's charge, and remain of the opinion that Insurer's ground of complaint, if any Insurer has, is not the failure to submit causation but the actual submission of causation in misleading terms.

The term "resulted in," used in Issues 5 and 8, submitted causation in fact, at least in some degree; its use was not a

completely void attempt to express that inquiry. Whether it was subject to mis-interpretation (and, for that reason, ought to have been defined) is a different question, and, to us, the principal question raised by this appeal. We adhere to our original conclusion that the term did not require definition—on this record.

*Duration* of such incapacity as plaintiff's injury caused was submitted to the jury in Issues 6, 7, 9 and 10; and these Issues are expressed in language which ought to have informed the jury that the disability they were considering was that caused by plaintiff's claimed injury, not by something else. The relevant Issues and findings follow.

(1) "Do you find—that (Plaintiff) sustained an injury on—April 16, 1946?" Answer: "Yes."

(3) "Do you find—that the injury, *if any you have found,* was sustained by (Plaintiff) because of emptying a garbage barrel into a truck?" Answer: "Yes."

(5) "Do you find—that *said* injury, *if any you have found,* sustained by (Plaintiff), *resulted in* total incapacity?" Answer: "Yes."

(6) "—when did *that* total incapacity, *if any you have found,* begin?" Answer: "April 16, 1946."

(7) "—how many weeks of *such* total incapacity, *if any,* do you find was sustained by (Plaintiff), *from and after the beginning date,* if any?" Answer: "Yes. 145 weeks."

(8) "Do you find—that *said* injury, *if any,* sustained by (Plaintiff) *resulted in* any partial incapacity to work?" Answer: "No. Totally disabled."

(9) "When do you find—*said* partial incapacity, *if any you have found,* began?" Answer: "None."

(10) "—how many weeks, if any, of *such* partial incapacity, *if any,* do you find was sustained by (Plaintiff) *from and after the beginning date,* if any?" Answer: "No partial incapacity suffered."

It seems to us that the *injury* referred to in Issues 5 and 8 is plainly that referred to in Issues 1 and 3, and that Issues 5 and 8 plainly inquire about the effect of that very injury, and of no other source of disability. Further, upon considering the terms underlined in Issues 6 and 7 and in Issues 9 and 10, it also seems to us that the *total incapacity* referred to in Issues 6 and 7 is plainly that referred to in Issue 5, and that the *partial incapacity* referred to in Issues 9 and 10 is plainly that referred to in Issue 8. We do not understand how the jury could have construed these Issues as authorizing them to consider incapacity which they did not, in fact, believe to have been caused by plaintiff's attempt to lift the barrel.

(3) We agree with Insurer that if the word "follow," a synonym for "result," had been used in Issues 5 and 8 instead of "resulted in," it would have, in all probability, been misapplied by the jury; but the error would have been in using an ambiguous term, not in failing to submit the issue of causation. The same ambiguity does not attach to "resulted in"; the idea expressed in the dictionary definitions of "result," quoted in our original opinion, is but one of several ideas expressed by the word "follow."

(4) We abandon the ground of distinction made in our original opinion between this case and Zurich General Accident & Liability Ins. Co. v. Wood, Tex.Civ.App., 27 S.W.2d 838, and decline to follow that decision if it has any application to this case. We hold that the term "resulted in" is not a legal term, and we hold, further, that it was not so apt to be misunderstood under the evidence as to require definition.

(5) Near the close of our opinion we made the statement: "Insurer makes no point of the absence of any issue fixing the fractional extent of a partial incapacity." We overlooked Issue 11 (made dependent upon Issue 8), which required the jury to find the extent plaintiff's wage earning capacity had been diminished by partial incapacity.

Insurer's motion for rehearing is overruled.