GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY CO. v. JOHN KUTAC ET AL.

No. 2486.

**1. Statute Construed—Right of Action.**—Article 2899, Revised Statutes, which in connection with other articles in Title LII confers right of action on the surviving husband, wife, children, or parents of one whose death has been caused by the wrongful act, negligence, unskillfulness, or default of another, construed, and *held*, that one having a right of action under said article should not be concluded by a judgment rendered in a suit brought by another having the same right of action and to which he was not made a party. The defendant in the first suit may by proper plea cause all persons having an interest to be made parties.

**2. Negligence.**—One who knows he is approaching a railway crossing, and whose view of the track is unobstructed so that he can see an approaching train in time to avoid injury from it, can not as a matter of law recover damages for injuries inflicted by the train in his effort to cross the track, even though the railway company may neglect to give the signals required by statute in crossing the road. One approaching a

railway track must look up and down the track, and a failure to do so is ordinarily negligence.

3.    Same.—The negligence of a joint enterpriser or servant is imputable both to the other joint enterpriser or master, but where the relation of guest and host exists the rule has no application, for the negligence of the one can not be imputed to the other.

4.    Right of Action—Statute Construed.—The word "children," as used in article 2903, may include persons over twenty-one years old.

5.    Argument of Counsel.—Words spoken in argument criticised.

6.    Negligence.—One who while riding in a wagon which collided with a railway train in motion was thereby injured through the negligence of those operating the train, he having no control over and giving no directions to the driver, will not in an action for damages have the contributory negligence of the driver imputed to him, but this does not relieve such an one from the duty of using ordinary care to avoid the injury.

APPEAL from Colorado.    Tried below before Hon. Geo. McCormick. The opinion states the case.

*W. N. Shaw* and *Clark, Dyer & Bolinger,* for appellant. —1.    Appellant is not liable because the death of Annie Kutac was not caused by any negligence of defendant, but was caused solely by the gross negligence and recklessness of the driver and those in charge of the wagon.    H. & T. C. Ry. Co. v. Smith, 52 Texas, 178; G. H. & S. A. Ry. Co. v. Bracken, 59 Texas, 71; I. & G. N. Ry. Co. v. Graves, 59 Texas, 330; T. &. P. Ry. Co. v. Chapman, 57 Texas, 75; 2 Rorer on R. R., pp. 1055, 1061, 1062, 1067; Pierce on Railways, 343; C. R. I. & P. R. R. v. Austin, 69 Ill., 426.

2.    John Kutac being an adult son had no legal right to the aid or support of his mother, and the proof fails to show any reasonable probability that he was receiving or would receive any benefits from his mother, and the proof fails to show what if any pecuniary damages he sustained in his mother's death.    H. & T. C. Ry. Co. v. Cowser, 57 Texas, 293; Pierce on Railroads, 398; 2 Thompson on Neg., 1290; Chicago, etc., R. R. v. Swett, 45 Ill., 197.

3.    The statute authorizing suits for injuries resulting in death contemplates that but one suit shall be brought, and that it shall be either by all the parties interested in the death or by one for the benefit of all; and the father of plaintiffs, Joseph Kutac, having sued in the District Court of Fayette County for $20,000 damages for the death of Annie Kutac, and a trial having been had on the merits and final judgment having been rendered, it was error to exclude proof in support of defendant's plea of estoppel, to the effect that proof on said trial of Joseph Kutac against same defendant on same cause of action showed the existence of plaintiffs in this suit, and that said former trial was therefore a final trial on said cause of action in and by which the rights of all parties interested might have been and were finally determined.    Rev. Stats., arts. 2904, 2905, 2906, 2909; H. & T. C. Ry. Co. v. Moore, 49 Texas, 31; D. & W. R. R. Co. v. Spiker, 59 Texas, 437.

4.   Appellees were not entitled to recover unless under the facts their mother, Annie Kutac, had she lived could have recovered for her injuries. Rev. Stats., art. 2900; T. & N. O. R. R. Co. v. Berry, 67 Texas, 238.

5.   The court erred in refusing charge No. 3 asked by defendant, that if the father of plaintiffs (Joseph Kutac) had sued in a court of competent jurisdiction on the same cause of action in this suit and a final judgment had been rendered after a trial on the merits of said cause, the proof in said cause showing the existence of these plaintiffs as the surviving children of Joseph and Annie Kutac, that in this event these plaintiffs would not be entitled to recover.

6.   Joseph Kutac and his wife Annie Kutac had voluntarily chosen the wagon, a private conveyance driven by Frank Surcula, and had trusted themselves to his care and skill, and if his negligence contributed to produce injury it was imputable to both Joseph Kutac and Annie Kutac, and appellees should not recover.   L. S. & M. S. Ry. Co. v. Miller, 25 Mich., 274; Slater v. Burlington R. R. Co., 32 N. W. Rep., 264; Lockhart v. Lichtenthaler, 46 Pa. St., 151; Allyn v. Boston R. R. Co., 105 Mass., 77; T. & W. Ry. Co. v. Goddard, 25 Ind., 185; Rogers on Law of the Road, 65; 22 Am. and Eng. R. R. Cases, 358-9; Phil. & C. R. R. Co. v. Boyer, 97 Pa. St., 91; Cuddy v. Horn, 46 Mich., 596.

7.   On the theory that appellant and the driver of the wagon were both guilty of negligence the court in the concluding part of its charge absolutely directed the jury to find against appellant regardless of any contributory negligence of Annie Kutac or of her husband Joseph Kutac; the only single exception being that if Annie Kutac was assisting, advising, or controlling the driver of the wagon, and in this manner contributed by her negligence, that defendant would not be liable, but there was no proof or claim that Annie Kutac was assisting, advising, or controlling the driver of the wagon, and said charge was manifest error and greatly prejudiced appellant's case.

*Phelps & Lane* and *Foard, Thompson & Townsend,* for appellee.—The question of negligence *vel non* on the part of appellant was a question of fact to be left to the jury.

The jury having found against appellant this court will not set aside the finding if there is enough of evidence in the record to support it; neither will it be set aside if there is a conflict of evidence.

The running of the cars of appellant through the town of Schulenburg at the rate of twenty to thirty miles an hour and up to the point of collision with the wagon in which Annie Kutac was at the time of her death, in connection with the other evidence in the case, proves negligence on the appellant.

The train of appellant running at the rate of twenty-five miles an hour and blowing its whistle at from 100 to 150 yards of the crossing,

and the wagon traveling towards the crossing at the usual rate of speed, shows that the horses were on the track when the whistle blew, as it would take the train but ten seconds if that long to reach the crossing from the point at which it signaled.

The witness of appellant, McCauley, an old and experienced railroad man, proves that the cars were being run at an unlawful and unprecedented rate of speed through a populous town at the time of the collision.

The conduct of the employes on the train in running at such speed from Columbus through that town and Weimar and up to the point of collision show that they were careless, reckless, negligent, and having no regard for the safety and lives of those living along the line of the road.

A. O. Harris, an experienced railroad man, having been in the business for years, and a witness for appellant, stated that the usual rate of speed in running trains through towns was from six to eight miles an hour. Some of the witnesses state this train which collided with the wagon was running from thirty-five to forty miles an hour, others twenty-five, others fifteen to twenty, and others eighteen to twenty, across one of the main streets and thoroughfares of a town of 1200 people.

The law which gives the right to sue and confers the right to certain parties nowhere confines the privilege to minors. It is alleged in the petition that his mother was between forty and forty-five years of age, hale and hearty, economical, industrious, careful of his interest and welfare. She labored in the field, attended to the household affairs of her family, and thereby enabled him to live in comfort, and to assist in the accumulation of property. These allegations, we think, meet the objections stated and comply with the law. Rev. Stats., art. 2899, 2908.

We contend that appellant was guilty of negligence, and if they had not been their trains of cars would not have collided with the wagon, and Mrs. Kutac would not have lost her life; and she was perfectly innocent, having been guilty of no negligence which contributed to the accident, but if there was negligence, which concurring with that of appellant contributed to the accident, it was on the part of the driver of the wagon, and which negligence can not be imputed to Mrs. Kutac; therefore the appellees are entitled to recover upon the grounds that the appellant is guilty of negligence, and Mrs. Kutac was not guilty of any contributory negligence. And even if her husband's negligence joined with that of the driver concurred with that of the appellant causing the injury, their negligence can not be imputed to her, because it can not be contended rightfully that either in law or fact or upon the principles which govern such cases as this that her husband was under her control or management, or that she was his mistress, he her servant or agent; in fact all presumptions are against such a position. It would be right and just to make the appellant pay the damages found by the jury, because its negligence in the first place caused Mrs. Kutac's death, and if they

had not been negligent it would not have occurred.  Transfer Co. v. Reiley, 36 Ohio, —; Chapman v. N. H. Ry. Co., 19 N. Y., 36; 20 N. Y., 492; 36 N. Y., 225; Robinson v. Ry., 36 N. Y., 11; Albion v. Matunic, 90 Ind., 545; Ry. v. Greenlee, 62 Texas, 344.

The charge was fair and applicable to the facts.  City of Galveston v. Morton, 58 Texas, 409; Merriweather v. Dixon, 28 Texas, 19; Com. Bank v. Jones, 18 Texas, 811; Devine v. Morton, 15 Texas, 26; James v. Thompson, 14 Texas, 463.

As to allegation of speed.  5 Am. and Eng. R. R. Cases, 628; R. R. Co. v. Graves; 59 Texas, 330; R. R. Co. v. Lowry, 61 Texas, 149; Bell v. Han. & St. Jo R. R. Co., 72 Mo., 50; Terre Haute & Ind. R. R. v. Clark, Am. and Eng. R. R. Cases, 84.

Hobby, Judge.—This action was brought by the surviving children of Mrs. Annie Kutac to recover actual and exemplary damages sustained by reason of her death, which resulted from a collision between a locomotive of defendant and a wagon in which she was riding.

The plaintiffs claim that the proximate cause of the collision in which she received the injuries resulting in her death was the gross negligence of those in charge of the engine and cars of appellant in running the same at a dangerous and reckless rate of speed over its road through the town of Schulenberg and over the public highway where it crossed the railroad at the point of collision, and also in failing to give the statutory signals while approaching said crossing.

The defense is that the collision was the direct result of the negligence of the driver of the wagon and Joseph Kutac, her husband, and that of herself—all of whom were in the same—in failing and neglecting to see the approaching engine and in driving on the crossing of the track without keeping the lookout the law requires, and in not using the ordinary care and prudence required of persons attempting to cross a railroad at a public crossing.  There was also a general denial of negligence by defendant and a plea in bar of a former judgment against Joseph Kutac, father of plaintiffs, rendered in the District Court of Fayette County on the same cause of action and in favor of defendant.  Proof in support of this plea was excluded.  A judgment was recovered by plaintiffs for the sum of $10,000 actual damages as apportioned among them by the verdict.

Several errors are assigned for a reversal of the judgment, which will be considered without regard to the order of their presentation.

The petition alleged, as was also pleaded by defendant in bar of recovery in this action, that Joseph Kutac, the father of plaintiffs and surviving husband of deceased, had previously sued the defendant upon the same cause of action in the District Court of Fayette County, and in which suit a judgment was recovered against him by the defendant, and for this reason it was alleged in the petition he was not joined as a

plaintiff in this cause. In support of the defendant's plea that the plaintiffs were estopped from a recovery by this final judgment against Joseph Kutac certified copies of the proceedings in the District Court of Fayette County were offered in evidence, as was proof also that it was disclosed on that trial that the plaintiffs herein were the surviving children of Mrs. Kutac and were in existence. The defendant on the trial of this cause also requested an instruction to the effect that if Joseph Kutac had brought such a suit in a court of competent jurisdiction, and after a trial on the merits it terminated in a judgment in favor of defendant and the proof therein showed the existence of the plaintiffs, and that they were the surviving children of the deceased, they would not be entitled to recover in this action. The evidence referred to was upon objection excluded and the requested instruction refused. The defendant excepted and assigns the ruling of the court as error.

While it is true that the statute (Rev. Stats., art. 2899) authorizing the institution of suits of this character evidently intended that one suit should be brought, and although it has been so construed in several cases (Railroad Co. v. Le Gierse, 51 Texas, 199; D. & W. R. R. Co. v. Spiker, 59 Texas, 437) it was not intended by the statute or the construction of it in the cases mentioned that a person having a right of action under that statute should be precluded or his rights in any manner affected by a judgment to which he was not a party in favor of the defendant against one who might also have a right of action with such person. If several persons having the right to sue would be concluded by a judgment to which they were not parties against one having the right of action with them, the result would be that one would have the power to compromise and destroy the right of all who could sue in the same action. There is nothing in this inconsistent with the rule that only one suit should be brought under the statute. And it is entirely within the defendant's power to require that only one such suit shall be brought. Where, as in the case tried in Fayette County, it was developed during the trial that the plaintiffs were then living and were the surviving children of the deceased and as such entitled to sue, the defendant if it desired a judgment binding upon them could have required them by a proper plea to be made parties plaintiffs. Not having done so it ought not to be heard now to insist that they are concluded by a judgment rendered in a suit to which they were not parties and which it could have had them made parties to if it desired them bound by it.

We think, therefore, that the plaintiffs in this case were not concluded by the judgment rendered in the suit in the District Court of Fayette County brought by the father, Joseph Kutac, for himself only and to which they were not parties and the court did not err in excluding the evidence offered nor in refusing the instruction requested on this point. But as the petition alleged the recovery of the judgment against him

(Joseph Kutac) on the same cause of action on which the suit of the plaintiffs was founded, and as there was no controversy as to the fact that he was one of the parties having the right to sue under the statute for damages resulting from the death of Mrs. Kutac, the jury should have been instructed, in the event the plaintiffs were under any circumstances entitled to a verdict, that no damages sustained by Joseph Kutac, the surviving husband, if any were shown by the evidence, could be properly considered. The case called for such an instruction we think.

Appellant urges under its assignments that there is an entire failure in the evidence to show negligence in its employes which contributed to the collision, and claims that the testimony shows that it was solely caused by the reckless conduct and gross negligence of the driver and those in charge of the wagon. As set forth in their petition the right of plaintiffs to recover is predicated upon two distinct acts of gross negligence upon the part of appellant, charged to have been the direct cause of the collision, notwithstanding the exercise of proper care by their mother, Joseph Kutac, and the driver, all of whom were in the wagon. They say that the collision occurred at one of the most public crossings of a constantly used highway; that "each of them used due care and prudence in their approach to the crossing, and neither of them by any act of negligence contributed to the collision;" that at the time the train was being run at a dangerous and reckless speed; that no whistle was blown, bell rung, or other notice of the approach of the engine given until so near the wagon that it was impossible for their mother, Kutac, or the driver to avoid it, and that appellant could have seen the wagon in time to have avoided it if its employes had used proper care, etc.

If these allegations are supported by the evidence, unquestionably the plaintiffs would be entitled to a judgment. It can not be insisted we think that there is any proof of the failure to give the statutory signals. The only testimony having any tendency to support this allegation is the evidence of the driver Surcula and that of Joseph Kutac, who testified by depositions to the effect "that they heard and saw no signals which should have been given by those in charge of the engine."

The evidence of a number of witnesses and all who witnessed the collision is direct and positive that the whistle was blown repeatedly on approaching the crossing sharply, and by its peculiar and unusual sound attracted their attention. One of the plaintiffs' witnesses testified to hearing it.

The evidence as to the rate of speed at which the cars were running at the time of the collision is conflicting. The witnesses testifying upon this point varied in their statements, ranging from fifteen to forty miles an hour.

There is no controversy about the fact that all the occupants of the wagon were well acquainted with the crossing, and had frequently trav-

eled the road.   On the day of the collision Kutac and his wife were in the town of Schulenberg.   Having sent their own wagon home some distance in the country and to avoid walking they obtained the consent of Kahornok to return in his wagon, which was driven by one Frank Surcula.

From the description given by the witnesses of the public highway and the railroad, it appears that they run parallel with each other west from the depot at Schulenberg, the highway north of and within about 40 feet of the railroad.   It is about 900 yards from the depot to the place of the collision.   The railroad is level and does not curve between these points.   There is a rise on the dirt road or public highway about 250 yards from the crossing.   The railroad runs through this rise on what is commonly called "a cut."   After reaching the highest point on this rise there is nothing to prevent one from seeing a locomotive at any point on the track for at least 250 yards before reaching the crossing.   This rise is evidently the elevated part of the road referred to by plaintiffs' witness, Surcula, as the place where he "looked to see if any locomotive was coming from any direction;" and seeing none and hearing no signals he drove on.

About 50 feet from the crossing the road running west changes its course, and at a point known as Oil Mill Switch crossing turns south, and in crossing to the south side of the railroad it forms an acute angle, or nearly so.   There was nothing to prevent the occupants of the wagon from seeing the engine coming from the depot at this point for a distance of 200 yards, and it was seen by all the witnessess who saw the collision except Surcula and Joseph Kutac.   The evidence in the case shows that by the exercise of that care and prudence which the law requires of those approaching a public crossing of a railroad the occupants of the wagon could have seen the engine in time to have avoided the accident.   That the driver and the husband of the deceased could have seen it we think there is no doubt from the facts.   That the deceased Mrs. Kutac also by the exercise of the same care could have seen the approaching cars is evident, as it is also that she was familiar with the crossing.

Several witnesses testified that the driver had sufficient time to have stopped his team and have avoided the collision.   This fact is shown by his own evidence.   Two wagons had crossed at the same place just ahead of him and one was just in the rear of his wagon.   Neither of these had any better opportunities for avoiding the collision than he had.   There is much evidence showing that he drove his team at a recklessly rapid rate to the crossing without keeping any lookout.

The cause of the collision is ascribed by him to the fact that "while he was on a more elevated road he looked to see if a locomotive was coming from any direction.   Seeing none and hearing no signals he drove on to the crossing and the collision occurred."   If the witness described cor-

rectly the railroad, highway, and surroundings, the po'nt referred to by him as the "elevated road," was at least 250 yards from the crossing, and if this locality is as the entire evidence shows it to be, the occupants of the wagon by the exercise of ordinary care and prudence could have seen the engine, whether its speed was five or forty miles an hour and whether it did or did not give the statutory signals.

Ordinarily the fact that the customary signals were not made does not relieve a person approaching an open crossing from the duty of keeping a proper lookout on approaching the road. And where a person knowingly about to cross a railroad track may have an unobstructed view of the railroad so as to know of the approach of a train a sufficient time to clearly avoid any injury he can not recover as a matter of law, although the company may have been negligent or neglected to perform a statutory requirement. I. & G. N. R. R. v. Graves, 59 Texas, 331.

In this case the signals were made as the evidence shows. The rate of speed at which the train was moving is not shown by the testimony of the plaintiffs' witnesses to have been the proximate cause of the accident, as the driver and Kutac both state that the engine and wagon reached the crossing at about the same time, and the testimony of those in charge of the cars, which is not contradicted, is that when the wagon was at Oil Mill switch, fifty feet from the crossing, the whistle of the engine was blown as a warning and the air brakes applied immediately on seeing that the wagon continued to approach the crossing, and that all the care was used that it appears could have been exercised by those in charge of the engine to avoid the collision.

Conceding though that a reasonable construction of the testimony justifies the conclusion that appellant's negligence, concurring with that of the driver, caused the collision, and accepting the American rule upon the subject of what is termed imputed contributory negligence of third persons, to the effect that his negligence should not be imputed to Mrs. Kutac, the result would be that in this case a recovery is had in the absence of any evidence whatever of ordinary care upon her part, and that too under circumstances which show that if such care had been exercised by her the injury received might have been avoided. Although the circumstances surrounding her were such that she may not have been chargeable with the driver's negligence, they were such as required of her the exercise of ordinary care. The driver's negligence would not relieve her of this. There is no evidence tending to show that she could not have exercised this care, nor is it made to appear why it was not used under circumstances that might have prevented the injuries resulting in her death.

The plaintiffs in this case can not recover under a state of facts which if she had survived would not have entitled her to recover because of her want of ordinary care. In a suit brought by her it would have been es-

sential to show that she used the ordinary care which it is said a reasonably prudent person similarly situated under all the circumstances would have exercised. Slight negligence, says a high authority, rejecting the artificial classification and distinctions made on this subject, will not prevent a recovery, but the slightest want of ordinary care contributing proximately to the injury will do so. Beach on Con. Neg., pp. 19, 20.

It is not disputed in this cause that Mrs. Kutac was well acquainted with the highway, the railroad, and crossing, and had traveled it, and although there was no evidence that she "aided, assisted, or controlled" the driver's movements, there was proof having a tendency to show acts of omission on her part under all the circumstances from which the jury might have found that she did not use the ordinary care which the law requires to be shown to authorize a recovery.

What was the care a reasonably prudent person similarly situated would have used, and whether under the facts disclosed by the testimony she used this care, were proper questions to be submitted to the jury under appropriate instructions. It is well settled that a person in approaching a point where a railroad track is crossed by a highway must look up and down the track attentively, and a failure to do so is generally negligence.

Knowing, as Mrs. Kutac did, the highway and crossing, the law made it her duty to keep a proper lookout for approaching cars, and while the law does not hold her responsible for the negligence of a third person it does impute her own to her. Whether she saw the engine, or by the use of ordinary care could have seen it, there being nothing to obstruct the view of the track, before reaching the crossing—whether, knowing the danger to which she was exposed, she remained voluntarily in the wagon, were matters proper to be considered.

The court in substance instructed the jury that if the driver of the wagon was guilty of negligence this would not prevent a recovery if the negligence of the defendant and not the contributory negligence of Mrs. Kutac caused her death, unless the jury believed she was assisting, advising, or controlling the driver in his actions, and thus contributed to her injury.

As we have stated we do not think the negligence of the driver was imputable to Mrs. Kutac if she used ordinary care to avoid the injury. In so far as it announced that principle the charge was correct. It is opposed to the English rule declared in Forogood v. Bryan, cited in Beach on Contributory Negligence, 108, that the negligence of the carrier contributing to the injury is imputed to the plaintiff. This rule appears to have excited much discussion and comment, and prevails in Pennsylvania, Iowa, Wisconsin, and probably other courts in a qualified form. It is rejected, however, by the weight of American cases, which hold that there is no privity between the passenger and the carrier, and that the latter's contributory negligence is not imputable to the former. Applied

to private carriers the rule is said to be that if the relation of joint enterpriser or of master and servant exists, then the negligence of one joint enterpriser or servant is imputable to the other joint enterpriser or to the master. But a mere guest, as in this case, is not a master or joint enterpriser, nor can the negligence of the host or his servants be imputed to the guest. Gray v. Phil. R. R. Co., 22 Am. and Eng. R. R. Cases, 355 and note.

The court had in another part of the charge told the jury that plaintiff could not recover if Mrs. Kutac could have prevented the injury by proper care and prudence. But this was followed by the instruction quoted, which made the want of ordinary care or prudence upon her part depend in this case upon acts of "assistance, advice, or control of the driver's actions which thus contributed to her injury." This was an incorrect standard. The test the law applies, and which is well settled in a multitude of cases, is a want of ordinary care.

In the application of this instruction to that part of the evidence to the effect that the driver was whipping and urging his team at a rapid rate of speed, as if to reach the track and cross before the engine, the jury might have inferred that unless she thus contributed to her injuries by the manner pointed out in the charge plaintiffs should recover. There was no testimony whatever that she contributed in this way to her injuries. There was no evidence from which the jury might have inferred that her want of ordinary care contributed to them.

We think the charge was calculated to mislead and was erroneous.

There was no error in refusing the instructions requested by the appellant, because they embodied the principle that the negligence of the driver is imputed to the passenger, which is not the law applicable to this case.

Nor was there error in overruling the exception to the petition in so far as it sought to recover damages in favor of John Kutac, who was alleged to have been more than twenty-one years old at the time of his mother's death. He was a surviving child of the deceased, and the statute makes no distinction upon this ground in declaring who shall have the right to sue.

The counsel for plaintiffs in his opening argument used this language in addressing the jury: "Gentlemen, these powerful railroad corporations will not do justice to any one unless compelled to do it. If they were to kill your horse to-day they would not pay you anything for it, but they would tell you to sue and go to the court for your money, and then they would fight you with all their power. They will take any advantage of you they can, no matter how just your case. Now I hope you will make them pay the last cent you can in this case for killing their mother."

There is no evidence contained in the record authorizing these remarks. The court properly instructed the jury not to be influenced by them, but

the finding of the jury "for the full amount sued for" indicates that this language was more effective than the court's instruction. Railway Co. v. Cooper, 70 Texas, 67.

For the reasons mentioned we are of opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted February 12, 1889.