**PACIFIC EMPLOYERS INDEMNITY COMPANY, Appellant,**

v.

**Enrique G. GARCIA, Appellee.**

**No. 381.**

Court of Civil Appeals of Texas.

Corpus Christi.

March 27, 1969.

Rehearing Denied April 17, 1969.

Keys, Russell, Watson & Seaman, M. W. Meredith, Jr., Corpus Christi, for appellant.

William R. Edwards, Corpus Christi, Arnold Garcia, Alice, for appellee.

OPINION

SHARPE, Justice.

This appeal is from a judgment in favor of Enrique G. Garcia, appellee, against Pacific Employers Indemnity Company, appellant. Garcia sued to recover benefits under the Workmen's Compensation Law. After jury trial, judgment was rendered awarding appellee compensation for 401 weeks at $35.00 per week, based upon total

and permanent disability, plus medical bills, less credit for weekly compensation payments totalling $525.00 theretofore paid by appellant.

Appellant asserts four points of error. Its first and second points are as follows:

*"FIRST POINT*

"The trial court erred in allowing Plaintiff's attorney to cross-examine Defendant's medical witness, Dr. Norstrom, by reading statements from medical texts not recognized by the witness, which tended to discredit Defendant's expert medical witness in a way not allowed by law, implying that the texts contained authoritative information when under the circumstances it was only hearsay.

*SECOND POINT*

"The trial court erred in allowing Plaintiff's attorney to indicate to the jury that his reading of statements from unrecognized texts, over Defendant's objections, were 'medical facts', and that any non-recognition by Defendant's medical expert of such statements, or any disagreement with such statements, was the non-recognition or disagreement with 'medical facts'."

■ On the trial of the case appellant called as a witness Dr. Craig W. Norstrom, a neurosurgeon of Corpus Christi, Texas. During cross-examination by counsel for appellee, Dr. Norstrom was asked if he recognized certain books as authoritative. In particular, Dr. Norstrom was asked about Campbell's Operative Orthopedics. He testified that it was a recognized work in the field of orthopedics. When asked if he recognized that work as authoritative in the field of lesions of the lumbar intervertebral disc, Dr. Norstrom said "I don't know that much about it." Dr. Norstrom was also asked about Dr. Samuel L. Turek, or if the witness ever had occasion to cite Hollander and Collaborators Arthritis or if he ever had occasion to see any works of Philip D. Wilson. Dr. Norstrom testified

he never heard of Dr. Turek, and couldn't recall having heard of or citing the other authorities or works. In those instances where Dr. Norstrom had not heard of or did not recall the authors or works mentioned, counsel for appellee then asked additional questions which were framed in terms of whether the witness agreed with counsel concerning statements incorporated in the question, referred to as matters of medical fact, regardless of whether the witness had heard of or recognized the authority or work previously inquired about.

Appellant's first two points are based upon the premise that counsel for appellee was permitted, over objection of appellant, to read into evidence excerpts from the texts or works with which Dr. Norstrom was not familiar or did not recognize as authoritative. Appellant's basic position here is that a medical witness cannot be cross-examined by reading excerpts to him from a medical book and asking him whether he agrees or disagrees therewith, unless he has either recognized such book as authoritative or has based his opinion in whole or in part thereupon, citing American Motorists Insurance Company v. Williams, 395 S.W.2d 392 (Tex.Civ.App., Ft. Worth, 1965, ref'd n. r. e.); Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949); Gravis v. Physicians & Surgeons Hospital of Alice, 415 S.W.2d 674 (Tex. Civ.App., San Antonio, 1967, reversed in part on other grounds, and affirmed in part, 427 S.W.2d 310, Tex.Sup.Ct.1968, after appellant's brief was filed herein); Gray v. L–M Chevrolet Company, 368 S.W.2d 861 (Tex.Civ.App., El Paso, 1963, ref'd n. r. e.); Texas Employers' Insurance Ass'n v. Nixon, 328 S.W.2d 809, 812 (Tex.Civ.App., Houston, 1959, ref'd n. r. e.). Appellee does not disagree with the rule stated by appellant but contends it is here inapplicable.

Counsel for appellant did not object to the form of the questions asked by counsel for appellee, but, rather, as to the alleged fact that he was reading from a book in connection with the questions propounded.

The principal difficulty with appellant's position under its first two points is that the record does not show that counsel for appellee told the court or jury or indicated to either of them that he was reading from the books which Dr. Norstrom did not recognize, nor does the record before us show that he was doing so. On one occasion counsel for appellant asked counsel for appellee to specify what the latter was referring to in his question and counsel for appellee replied: "My question is what I am referring to." We, therefore, cannot hold on the record before us that counsel for appellee read statements from medical texts or that he indicated that such texts contained authoritative information (when under the circumstances they were hearsay) or that counsel for appellee cross-examined Dr. Norstrom in an improper way which tended to discredit his testimony. Neither can we hold that counsel for appellee indicated to the jury by reading statements from texts unrecognized by the witness in such a way that his nonrecognition or disagreement amounted to nonrecognition or disagreement with medical facts.

If a question of the type here involved is otherwise proper, it is not objectionable solely because a statement in it is framed with the aid of a book or other written material, the identity or source of which is not disclosed to the jury. See Fidelity and Casualty Co. of New York v. Davis, 354 S.W.2d 228 (Tex.Civ.App., Eastland, 1962, n. w. h.); Lubbock Bus Company v. Pearson, 277 S.W.2d 186 (Tex.Civ.App., Amarillo, 1955, wr. ref. n. r. e.); Wilborn v. State, 64 S.W. 1058 (Tex.Crim.App., 1901).

In Fidelity and Casualty Co. of New York v. Davis, supra, the Court held in part as follows:

"The defendant's medical witness did not recognize Spurling. It would not have been proper for plaintiff's attorney to read excerpts from the book and ask said witness if he agreed or disagreed with them. It would have been improper to discredit the medical witness' testimony in this manner under the rule announced in Bowles v. Bourdon. However, the question which the plaintiff's lawyer asked the medical witness before he was instructed by the medical witness to read from the book was entirely proper. The question did not reveal borrowed language or quotations from any authority. The record does not show from what source plaintiff's counsel received assistance and information in framing his question. The text book was not introduced as evidence nor considered as such at the time the question was asked. * * *"

In Lubbock Bus Company v. Pearson, supra, the trial court sustained appellee's objection to a question propounded by defense counsel upon the ground that it was evident that defense counsel was reading from some unknown medical book with which the doctor witness might not be familiar and which had not been recognized as authoritative, and that it would therefore be hearsay testimony. On appeal, appellant urged that the question was proper and that it was immaterial that he had read from a book in propounding the question. Although the Court of Civil Appeals found that reversible error was not presented, it held in part as follows:

"* * * We think appellant's contentions in this respect are sound. When appellant's counsel propounded the question, the language he used became his own, since the language used by him did not reveal any borrowed language or any quotation from any other authority. The language used by most of us we got from books or from some other source. Nevertheless, when we use the language in our own way without giving others credit for it, such language becomes our own language. It is our opinion that the question as propounded was a permissible one on cross examination and the trial court should have permitted Dr. Cross to have answered the question if he could. * * *"

On the record before us we cannot distinguish the questions objected to by appellant (as allegedly being read in part from unrecognized texts) from those which asked in substance whether the doctor agreed with statements of alleged medical fact incorporated in the questions propounded by counsel for appellee, which ordinarily would be proper. Appellant's points one and two are overruled.

Appellant's third point reads as follows:

### "THIRD POINT

"The trial court erred in sustaining Plaintiff's Motion in Limine No. III, which ruled that Defendant could not bring up the possibility of myelography as a diagnostic tool in connection with the determination of whether the Plaintiff had a probable ruptured intervertebral disc, and further erred on the same point in excluding from evidence the testimony of Dr. J. A. Garcia of Alice, a witness for the Plaintiff, wherein on cross-examination, upon bill of exception, Defendant's attorneys developed that a myelogram procedure would have been a useful diagnostic tool, and is a useful diagnostic tool in determining the existence of an intervertebral disc, which testimony was offered in evidence by Defendant, and excluded by the court in a continuation of its ruling Plaintiff's Motion in Limine No. III."

The trial court sustained the motions in limine filed by appellee, reading in part as follows:

### "III.

"Plaintiff has reason to believe that during the trial of this cause Defendant may attempt to interject the possibility of myelography as a diagnostic tool. Myelography involves a surgical procedure and is subject to the same limitations as other surgical procedures and because Defendant failed to admit liability and to tender such surgery before the Industrial Accident Board, as stated above, Defendant is wholly precluded from in any way interjecting before the jury any possibility of a myelogram in this case.

"Were any of such facts made known to the jury, it would be highly improper and prejudicial to the Plaintiff, even though the Court were to sustain an objection and instruct the jury not to consider such facts for any purpose. This motion should also be granted because there is no other way the problem mentioned can be properly handled at the trial of this cause, and in all probability any such attempt would result in a mistrial.

"WHEREFORE, this Plaintiff respectfully requests the Court to instruct the Defendant and all its counsel not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner, either directly or indirectly, any of the above-mentioned facts, without first obtaining permission of the Court outside the presence and hearing of the jury, and further instruct the Defendant and all its counsel to warn and caution each and every one of its witnesses to strictly follow the same instructions."

On the trial of the case, appellee's witness, Dr. J. A. Garcia, while being cross-examined by counsel for appellant, volunteered a statement that myelographic studies had not been done on appellee. The subject was not pursued at that time. Later, counsel for appellant made a bill of exception (out of the presence of the jury) in connection with the trial court's ruling on appellee's motion in limine number III, and interrogated Dr. Garcia about myelographic examinations. At the conclusion of the bill of exception counsel for appellant requested the court to change its ruling on appellee's third motion in limine and to permit examination of Dr. Garcia before the jury concerning a myelogram, which request was denied.

The testimony of Dr. Garcia on the bill of exception was in substance as follows:

On direct examination conducted by counsel for appellant, Dr. Garcia said that

myelography is a procedure in which a needle is introduced into the spinal canal and material injected which is radiopaque on radiographic pictures. A portion of the spinal fluid is removed and opaque fluid is temporarily substituted so that pictures of the spinal canal can be made on x-rays. The pictures show where the opaque material flows within the spinal canal. Dr. Garcia said that this is a diagnostic procedure and he would not necessarily refer to it as surgery, and in doctor's conversation generally if the point came up, this would not be considered surgery but would be considered a diagnostic x-ray procedure. The radiopaque material will delineate the walls of the spinal canal and its contour and if there is any impingement on the canal, it is delineated by radiographic technique. If there is some failing in what would be expected to be shown in a normal spinal canal, there is some indication that there is a projection or something pushing into the spinal canal that really should not be there. Dr. Garcia further said that if a projection into the normal contour of the spinal canal is seen, that indicates there is impingement upon the canal, but if the myelographic study is negative that does not rule out an impingement on the spinal canal. If a positive myelogram is obtained that would strengthen the opinion on the point, but if the photograph is negative the patient still could have a protruded or herniated disc. Dr. Garcia felt that in this case it would be of some help to see a myelogram and its results. On cross-examination on the bill of exception, conducted by counsel for appellee, Dr. Garcia said that myelograms are always performed under surgical or antiseptic technique. He does not perform myelograms. They involve a highly skilled procedure, not without extreme dangers. They are mostly performed by neurosurgeons, people trained in surgery, in an operating room, using an anesthetic. The needle used in the procedure cuts the skin as it enters the spinal canal and this is a cutting procedure in the broad sense. On re-direct examination Dr. Garcia said there are some hospitals where a particular location or room is set aside mainly for myelogram tests, which is not a general operating room, and this is an ideal condition. On further examination Dr. Garcia said such rooms are surgically sterile and a sterile needle is used.

We agree with appellee that the trial court ruled correctly in sustaining the motion in limine and in refusing to admit the testimony of Dr. Garcia developed on the bill of exception. Appellant's basic contention under its point three is that myelography is a useful diagnostic tool and evidence to that effect by further cross-examination of Dr. Garcia should have been admitted. Appellee's position is that myelograms are surgical in nature although used for diagnostic purposes without curative effect; that a Workmen's Compensation claimant may not be required to submit to such surgical procedure except where the insurance carrier admits liability and tenders surgery in the manner provided by law; that the insurance carrier may not show the benefits of such unperformed surgery where it has failed to admit liability and tender surgery; and that the testimony of Dr. Garcia which was developed on bill of exception and excluded by the court was irrelevant in this case.

The record does not show that any of the medical experts who examined appellee had ever requested myelography for him. Neither Doctors Garcia or Upshaw, appellee's witnesses, nor Dr. Norstrom, appellant's witness, who was a neurosurgeon and would generally perform a myelogram when needed, were shown to have requested a myelogram. If, as argued by appellant, a myelogram is only a mere examination instead of an operative procedure, and the appellant insurance carrier had desired to show the results thereof, it would have the right to request myelography at any time up to and during the trial. Wallace v. Hartford Accident &

Indemnity Co., 148 Tex. 503, 226 S.W.2d 612 (1950); Jones v. Commercial Assurance Company, 405 S.W.2d 207 (Tex.Civ. App., Beaumont, 1965, n. w. h.); Art. 8307, sec. 4, Vernon's Ann.Civ.St. Appellee argues that in the absence of a request by appellant (or anyone else) for performance of a myelogram on appellee, appellant should not be allowed to complain or infer to the jury that it had been deprived of the benefits thereof.

Appellee concedes that the results of a myelogram actually performed would be admissible, and that the same is true as to results of disc surgery. See Houston Fire & Casualty Insurance Co. v. Dieter, 409 S.W.2d 838 (Tex.Sup.Ct., 1966). However, appellee argues that such rules are here inapplicable because a myelogram had not been performed on appellee; that since there were no results to be known, the excluded evidence of Dr. Garcia did not tend to prove or disprove the accuracy of his diagnosis; and that such evidence did not tend to prove anything one way or the other concerning appellee's back difficulties. We agree with appellee that Dr. Garcia's testimony developed on bill of exception was irrelevant under the circumstances shown here. We also agree that performance of a myelogram is surgical in nature and that appellee's above-stated position as to inadmissibility of such testimony is also well taken on that basis. See Continental Casualty Company v. Swink, 329 S.W.2d 443 (Tex.Civ.App., Ft. Worth, 1959, wr. ref. n. r. e.), citing with approval Cranston Print Works v. Pascatore, 72 R.I. 471, 53 A.2d 452 (Sup.Ct., R.I., 1947); Provident Life and Accident Insurance Co. v. Hutson, 305 S.W.2d 837 (Tex.Civ.App., Beaumont, 1957, wr. ref. n. r. e.). We also hold that myelography is surgery within the meaning of Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521 (1960), and evidence of same is subject to the exclusionary rules stated therein. Appellant's point three is overruled.

Appellant's fourth point reads as follows:

*"FOURTH POINT*

"The trial court erred in overruling Defendant's objections to the Charge of the Court, because the submission to the jury did not require a finding that the compensable injury was the producing cause of any continuing or permanent incapacity of the Plaintiff * * *"

Under this point appellant argues that its objections to the court's charge, numbers 1, 2, 3, 4 and 5 directed to special issues 1, 2 and 12 should have been sustained. Appellant admitted liability for an accidental injury occurring on September 19, 1965, depending upon the extent and duration of appellee's disability. The jury found that appellee sustained another accidental injury on June 8, 1966, (Special issue No. 10), and that such injury was sustained in the course of employment (Special issue No. 11). Appellant admits that appellee suffered total incapacity beginning on June 11, 1966, and the jury was so charged in Special issue No. 1 without objection. The jury further found that the September 19, 1965 injury was a producing cause of appellee's total incapacity on or after June 11, 1966 (Special issue No. 1); that the June 8, 1966 injury was a producing cause of appellee's total incapacity on or after June 11, 1966, (Special issue No. 12); that appellee's incapacity was not solely caused by conditions arising independent of the injuries, (Special issue No. 14); and that the total incapacity beginning on June 11, 1966, is permanent, (Special issue No. 2). It thus appears that the jury found that the two injuries were each a producing cause of total incapacity, that such total incapacity was permanent, and it found against appellant on the sole cause issue.

Appellant's contention appears to be that although the total incapacity beginning June 11, 1966, found to have been caused by the injuries is permanent, there is no finding that the permanent disability resulted from the accidental injuries suffered by appellee. Appellant seems to

argue, further, that although the whole period of permanent total incapacity was not solely caused by conditions unrelated to the injury, that some part of the period of permanent total incapacity may have been solely caused by such conditions.

■ Assuming, without deciding, that such matters are available defenses, they are affirmative in nature and the burden was on appellant to plead, prove, and request issues on the same in substantially correct form. Rules 94, 279, Texas Rules of Civil Procedure. Appellant did not request issues submitting such affirmative defenses. Appellant's contentions under its point four are without merit. In Travelers Insurance Company v. Meyer, 392 S.W.2d 520 (Tex.Civ.App., Beaumont, 1965, wr. ref. n. r. e.) the defendant insurance carrier requested a series of issues presenting defenses of the same type as those involved in the objections made to the court's charge by appellant here. The court in *Meyer*, in part, said:

"* * * It is argued by defendant that the issue submitted by the court as to pre-existing conditions required the jury either to find that the incapacity was solely caused by such pre-existing conditions as a whole, or not at all, and that defendant was entitled to ask the jury whether or not some duration of the total incapacity was solely caused by such pre-existing conditions. This is a unique question which we have not seen raised before."

The Court there held in part that failure of the defendant to request issues on these defenses in substantially correct form required that the judgment against the insurance carrier be affirmed, without consideration of the merits of the defenses, saying:

"We hold that it is not necessary for this court to pass upon the question as to whether a defendant is entitled to have presented to a jury its affirmative defense supported by pleadings and evidence, that a part of the period of total incapacity was solely caused by pre-existing conditions, etc. The requested issues were not substantially correct as required by Rule 279, Texas Rules of Civil Procedure, * * *."

Appellant's objections Nos. 1–5 to the court's charge in this case appear to raise the same questions as were presented to the court in Pacific Indemnity Co. v. Arline, 213 S.W.2d 691 (Tex.Civ.App., Beaumont, 1948, wr. dism. agreement), also cited by appellee. In that case, a jury verdict substantially the same as in this case, except as to duration of total incapacity, was held to have properly presented the ultimate issues to the jury. Issues 5 and 7 there were in substance as follows:

"(Issue 5): Do you find—that said injury, if any—sustained by Ruby Arline resulted in total incapacity? Answer: Yes."

*   *   *   *   *   *

"(Issue 7): —how many weeks of such total incapacity, if any, do you find was sustained by Ruby Arline, from and after the beginning date—? Answer: Yes. 145 weeks."

In answer to Issues 14 and 15 there, the jury also found plaintiff's incapacity not to be due solely to disease or physical defects unconnected with the injury. In *Arline,* the insurance carrier's second special plea, alleged in substance:

"* * * that any disability caused employee by the incident of April 16th was temporary, lasting not over 12 weeks, and that all subsequent disability was caused solely by disease, etc., not connected with the alleged injury. * * *"

Appellant's contention here as stated in its brief is that:

"Appellant's evidence showed that Appellee suffered one or more back strains, but that he had recovered from such injuries, and continuing disability was caused by his congenital spinal defect combined with his overweight condition. * * *"

In *Arline* the Court held that the question of length of disability was properly presented in other issues and sustained the action of the trial court in overruling the insurance carrier's objections to the charge and in refusing to submit its requested special issues. We believe that the holdings and reasoning in *Arline* are also applicable here. Appellant's point four is overruled.

The judgment of the trial court is affirmed.