**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Richard E. HACKER, Appellee.**

**No. 17063.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 21, 1969.

Rehearing Denied Dec. 19, 1969.

---

Nelson, Sherrod, Carter & Oldham, and Stan Carter, Wichita Falls, for appellant.

Puff, Jameson & Denhow, and Jim Jameson, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

This is a Workmen's Compensation Case. The trial was before a jury. The judgment, in line with the jury verdict, awarded plaintiff compensation for total and permanent disability and the insurance company appealed. The parties will be referred to here as in the trial court.

■ Defendant's points Nos. 3, 4, 5 and 6 contend that there is no competent evidence and that the evidence is insufficient to support the jury's answer to Special Issue No. 15, finding that plaintiff worked in the same employment for the same or another employer for at least 210 days during the year immediately preceding the date of plaintiff's injury.

We overrule these contentions, believing and holding that there was sufficient evidence offered during this trial to support the jury's answer to Issue No. 15.

The record showed that for two different employers the plaintiff had worked a total of more than 210 days during the year immediately preceding the time he was hurt. The plaintiff and other witnesses testified in detail as to the nature of the businesses of the two employers and as to the various duties of the job plaintiff did for each employer. We believe that within the meaning of the Workmen's Compensation Law the jury was justified in answering Special Issue No. 15 as it did and that there was sufficient evidence to support the jury's answer to the issue.

■ One of defendant's main contentions in connection with this issue is that plaintiff, while testifying, made some judicial admissions contrary to the jury's answer to Special Issue No. 15 and that he is bound by them.

At one time plaintiff testified that his work at White's (his employer when hurt) was not all the same thing as his work at Domore's (the other employer for whom he worked during the material year) but that you could say it was similar.

At another time plaintiff testified that between June 17, 1967, and June 17, 1968 (the date of the injury) he had not worked at White's or for any other employer doing the same or similar work that he was doing at White's when hurt for as many as 210 days.

At another time plaintiff testified that his employment at Domore's was the same as it was at White's. At another time he testified that the employment at Domore's was not the same or similar to that at White's and that the two were altogether different.

Defendant contends that plaintiff's testimony as above indicated were judicial admissions and that plaintiff is bound by his statements that the work was not the same.

Each time plaintiff gave such testimony he was being asked whether or not the work he was doing at Domore's was similar or the same as that work he was doing at White's when hurt.

This simply asked for his opinion or conclusion about the matter.

Once plaintiff was being asked during this trial the following question: "Mr. Hacker, was the work out at Domore the same or similar employment as that out at Whites, or not?"

Defendant objected to it on the grounds that it invaded the jury's province and

called for a conclusion and the question was then not answered.

We also conclude that these expressions by plaintiff as to whether the work at White's and Domore's was or was not similar or the same are mere opinions of the witness and are not such statements that would conclusively bind a party.

■ It is clear from the cases of Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415 (1960) and United States Fidelity & Guaranty Co. v. Carr, 242 S.W.2d 224 (San Antonio Tex.Civ. App., 1951, writ refused) that it is necessary before testimony of this nature conclusively binds a party that five elements must be present. One element is that the statement relied on as conclusive on plaintiff must be deliberate, clear and unequivocal. We hold that opinion testimony of the nature here relied on does not meet that test and therefore plaintiff was not here bound by such opinions.

The plaintiff and other witnesses had outlined the facts with reference to the duties of plaintiff's job at Domore's and had also given the duties of his job at White's. Whether or not the employments were the same was the ultimate issue for the jury's determination.

The case of Griffin v. Superior Insurance Company, supra, 338 S.W.2d at page 418 says: "In 169 A.L.R. 799, II, * * *. Further, on pages 800–801, III, the rule is stated to be that 'if a party testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as an informal judicial admission.'"

Since it is obvious that the matters relied on by defendant as judicial admissions of plaintiff were mere opinions the plaintiff was not bound by them.

Defendant's points Nos. 1, 2, 7, 8, 9, and 10 all attack Issue No. 17 in the charge submitting the question of whether there was another employee of the same class as plaintiff who worked at least 210 days etc., under Subdivision 2 of Art. 8309, Sec. 1, Vernon's Ann.Tex.Civ.St.

It is not necessary for us to discuss these points in view of our holding that the evidence in the case sufficiently supported the jury's answer to Issue No. 15 wherein the trial court submitted the wage rate feature of the case under Art. 8309, Sec. 1, Subd. 1, V.A.T.S. Subdivision 2 of that statute does not become involved where Subdivision 1 is applicable as it is here. These points are overruled.

During the trial the plaintiff's lawyer, while cross-examining Dr. Burross, held some type of medical book or journal in his hands in the presence of the jury where the jury could see it and could see the lawyer looking at such book while asking questions, and he referred to such book while asking questions.

While the above was going on plaintiff's counsel asked questions and answers were given as related below.

"Q. Would you agree or disagree that the sum of the literature suggests that spondylolisthesis is presently considered to be an acquired anomaly with the defect of the pars interarticularis vesicles of both that originate either as a consequence of a stress fracture or as a result of acute trauma; do you agree or disagree with that, sir?

"A. I'd like for you to read the whole thing again, sir, if you would, because I think there's a lot you did specify in that.

"* * *

"Q. Dr. Burross, are you acquainted with Dr. Edward B. Henderson from the Mayo Clinic at Mayo Foundation Section of Orthopedic Surgery in Rochester, Minnesota?

"A. No, sir; I am not.

"Q. All right, but do you agree or disagree with my statement; I'm asking you

if you agree or disagree with my statement, please, sir?

"* * *

"Q. Do you agree or disagree with my statement, doctor, that the sum of the literature suggests that spondylolisthesis is presently considered to be an acquired anomaly with a defect in the pars interarticularis vesicles of both that originate either as a consequence of a stress fracture or as a result of acute trauma?

"A. Presently—the sum of the medical literature at the present time recognizes that the spondylolisthesis * * * let me make sure that I understand what you're talking about. That spondylolisthesis is an acquired defect which is based upon a congenital pars interarticularis defect associated with trauma or injury. Is this in essence what you're—

"Q. —that originates either as a consequence of a stress fracture or as a result of acute trauma * * * does this differentiate between that and a spondylolysis where there is no slipping—

"A. —I'm sorry; I'm not going—

"Q. —I'm talking about the slipping itself?

"A. No, sir; I will not recognize that statement."

The evidence had showed that the plaintiff had a preexisting back defect. This doctor said plaintiff had completely recovered from his injury and that any additional disability would be caused from this prior condition.

■ Defendant's 11th and 12th points are to the effect that the conduct of plaintiff's counsel with reference to using these medical pamphlets or journals as outlined above was reversible error.

We overrule these points, believing that a decision on the matter is controlled by the holding in the case of Pacific Employers Indemnity Company v. Garcia, 440 S.W.2d 335 (Corpus Christi Tex.Civ.App., 1969, writ ref., n. r. e.).

We believe that the most the record reflects that plaintiff's counsel was doing was using the journal or pamphlet as an aid to him in framing a question to ask the witness about a rather complicated medical matter.

The following is from the opinion in the Garcia case, supra:

"'* * * We think appellant's contentions in this respect are sound. When appellant's counsel propounded the question, the language he used became his own, since the language used by him did not reveal any borrowed language or any quotation from any other authority. The language used by most of us we got from books or from some other source. Nevertheless, when we use the language in our own way without giving others credit for it, such language becomes our own language. It is our opinion that the question as propounded was a permissible one on cross examination and the trial court should have permitted Dr. Cross to have answered the question if he could. * * *'"

By its points 13 through 22 defendant complains of argument made by plaintiff's counsel in his closing jury argument.

In connection with these points defendant says in its brief: "Although no single comment by the attorney would be reversible in itself, the continued line of argument is reversible, and this case should be reversed and remanded for a new trial."

We will here set out the particular argument complained of, the defendant's objection, if any, and the court's ruling in connection with it.

Argument No. 1—"All right. Now ,I want to talk about the issues. Oh, they want to rag us around, they say, why he's come in here and he says he's entitled to twelve thousand five hundred dollars, instead of his thirty-five dollars a week for four hundred and one weeks; and let me tell you in law why that is. It's because

this is a hardship case, even this insurance company has realized it. They say this is a hardship case—"

Defendant objected to this argument on the grounds that the court had by sustaining a motion ruled out anything regarding hardship. Both plaintiff and the trial judge said they thought defendant raised the hardship matter in its jury argument.

Plaintiff's counsel then stated he would withdraw the argument and the court said he thought he would sustain the objection and instruct the jury not to consider the argument.

Argument No. 2—" * * * Dr. Maxfield and his reputation were brought into this lawsuit, why this man didn't go to Dr. Maxfield; you are probably wondering about that.

"MR. SHERROD: They objected to it, and the Court sustained it. I don't believe he can go into it unless you let me go into it.

"MR. DENBOW: Well, we've been into it. They talked about Jackson and Maxfield—

"THE COURT: —Well, excuse me; what was your objection?

"MR. SHERROD: He started talking about the reputation of the doctor. We wanted to go into the reputation of Dr. Maxfield and his positions with the Medical Association, and so forth, and they objected, and the Court sustained it, and now they are going to turn around and go into the same—

"THE COURT: —I sustained it just about his reputation. He can argue about Dr. Maxfield—(NOT AUDIBLE, ATTORNEYS TALKING AT THE SAME TIME)

"MR. DENBOW: Judge, would you keep a record of his jury speeches?

"THE COURT: Yes.

"BY MR. DENBOW: Dr. Maxfield, why didn't he go there? Because he talked to Mr. Jackson at the labor board. And I am certain that Mr. Jackson told him that he is a notorious insurance company doctor and don't go down there—

"MR. SHERROD: —Now if the Court please, we object to that.

"THE COURT: I'll sustain the objection.

"MR. DENBOW: I'll withdraw it.

"MR. SHERROD: We object to him making improper argument that he knows are improper at the time and then jump up after he's made it and say, I'll withdraw it. That's highly improper.

"THE COURT: I'll sustain the objection.

"MR. SHERROD: I ask the Court to instruct the Jury not to consider that argument for any purpose whatsoever.

"THE COURT: You are so instructed."

Argument No. 3—"Let me tell you what I think happened in this situation. I think that on the 17th day of June Richard Hacker sustained an injury on the job. I think he reported it to his boss just as he says he did. I'll get to my reasons for why I don't think they recall that in just a moment. The insurance company investigated the case. They hired and have on staff some adjusters. One of them is sitting in the back of the Court-room and he's been dogging this Court-room all week and these halls.

"MR. SHERROD: He was on the Jury Panel, if the Court please.

"MR. DENBOW: That's right. He certainly was. He was sitting on the Jury Panel and we were forced to ask the Court to excuse him, because he would not disqualify himself and say I cannot be a fair and impartial juror, when he was working for the very company we were suing. That's not fair.

"MR. SHERROD: —Excuse me. If the Court please, that's not true; it's not

in the record. He did not have to exercise a challenge on him. The man told that he was notified by registered mail to appear, he was on the jury panel. He comes up here and he's assigned to one court-room and then another. He has nothing to do with his being assigned to this court. He didn't know what case was coming up, when or where and after he left here, he went to another courtroom. But for them to criticize him because he's 'dogging' the Courthouse this week when he's on the jury panel, we think it's improper for him to say they had to exercise a cut to get him off. They didn't have to do any such a thing. The Court excused him.

"MR. DENBOW: I didn't say we did. I said we had to have the Court to excuse him.

"THE COURT: All right, Counsel. I'm going to overrule his objection.

"MR. SHERROD: And we ask the Court to instruct the Jury to not consider—

"THE COURT:—The objection is overruled.

"MR. SHERROD: Please note our exception."

Argument No. 4—"I apologize to the Jury also for becoming a little steamed up. When I get a little steamed up I see an all powerful insurance company kick a workman down. Never paid him one penny compensation. No, sir; wouldn't even pay the doctor bill; and then let's go to good old Dr. Burross. I'm not going to jump on him. But did you notice they didn't even pay Dr. Burross' bill; Dr. Burross who they send all their business to out there at Whites, who does insurance examinations, handles their—

"MR. SHERROD: —Now, if the Court please—

"BY MR. DENBOW: —physicals out there for Whites.

"MR. SHERROD: That issue isn't before this jury. The bill hasn't been sued on or presented. It has not been turned down; it hasn't been paid; it isn't in issue in this case.

"MR. DENBOW: He said he hadn't paid it.

"MR. SHERROD: Well, it hasn't been refused to pay it either, but it's no issue before the jury. We ask the Court to instruct the Jury not to consider that.

"MR. DENBOW: Well, I'll withdraw that.

"MR. SHERROD: Will you please instruct the Jury not to consider that.

"THE COURT: You are instructed not to consider the fact that the defendant failed to pay the doctor's bill."

Argument No. 5—"BY MR. DENBOW: Can we agree that they are just a little slow pay. The treatment was in June and July and they haven't paid yet. But they don't intend to refuse it, it just hasn't been submitted to them.

"MR. SHERROD: That's the same thing, if the Court please, criticizing us for—

"THE COURT:—Overrule the objection.

"MR. SHERROD: It's not an issue in this lawsuit.

"THE COURT: Overrule the objection.

"MR. DENBOW: Thank you, your Honor."

Argument No. 6—"I ask you to refer again to the definitions that Mr. Jameson talked with you about. Total disability; see what it means, look at it. Look at the liberal definition. I cannot ask you to apply the Golden Rule as we learned it in the Bible; the Court will not permit that either. And I cannot ask you to put yourself in the place of Richard Hacker.

"MR. SHERROD: Well, now, if the Court please, if he can't do, what's he up here arguing about; we object to it.

"MR. DENBOW: This is jury argument, your Honor.

"THE COURT: Overrule the objection.

"MR. SHERROD: We object to him attempting to do indirectly what he says he cannot do directly, and he calls the Jury's attention to it; and we ask the Court to instruct the Jury not to consider that argument for any purpose.

"THE COURT: Overrule the objection."

Prior to trial time defendant had filed a motion in limine wherein it stipulated that if plaintiff got a judgment it should be paid in a lump sum and asking the court to instruct counsel for plaintiff not to mention anything relative to hardship before the jury. The court sustained this motion. The argument designated as No. 1 above was in violation of this court order and was improper because the issue of hardship was no longer in the case. See 56 Tex.Jur. 2d 595, § 258.

Argument designated as No. 2 was improper because it was argument outside the record, there being no evidence in the case that Mr. Jackson told plaintiff that Dr. Maxfield was a notorious insurance company doctor.

■ Argument No. 3 was not justified by the record in this case and was improper and very prejudicial. It had the effect of indicating to the jury that defendant was trying to cheat plaintiff in some way when all that both sides indicate occurred was that an adjuster was called for jury service, he responded to the call, and when it developed that he was an adjuster the court excused him. These facts were what brought on this argument No. 3.

Relative to arguments 2 and 3 above we refer to the following from 56 Tex.Jur.2d 613, § 271, where it is said: "It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper."

■ Argument No. 4 saying that when plaintiff's counsel gets a little steamed up he sees an all powerful insurance company kick a workman down was in our opinion error. We believe that no instruction the trial court might have given would have the effect of withdrawing the damage done by such statement in this case. It should not have been made. This argument was similar to that condemned by the court in Galveston, H. & S. A. R. Co. v. Kutac, 72 Tex. 643, 11 S.W. 127 (1889).

■ We do not believe that argument No. 6 above was error. The Supreme Court in Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943), held that it was not error for counsel to tell the jury to follow the Golden Rule because such rule would require the jury to look with equal solicitude to the rights of both plaintiff and defendant.

■ The facts relative to the argument No. 5 were in evidence. We do not believe this argument to be erroneous. A lawyer may discuss facts established by the evidence. 56 Tex.Jur.2d 585, § 253.

The object of every trial is to give every litigant a fair and impartial trial according to the facts and circumstances that are properly before the court and jury. 56 Tex.Jur.2d 396, § 61.

On the trial of this case each party produced one medical witness. The plaintiff produced Dr. Florence who testified that plaintiff's back had in it prior to the injury date severe congenital defects that in his opinion were of such a nature that plaintiff could not, even before the date of the injury, get and hold a job requiring stooping, bending and lifting. He said his back condition was such that he should not have been working when he got hurt. He said his back condition before injury was such that you would expect him to get down in the back after working a while for one employer. He testified that the injury of June 17, 1968, aggravated these congenital defects in plaintiff's back.

Defendant's doctor, Dr. Burross, testified that plaintiff's back was defective due to congenital defects. He testified that plaintiff, when hurt, got a lumbo sacral strain and that plaintiff has recovered from the strain and was at time of trial able to work. He believes plaintiff completely recovered from the injury of June 17, 1968.

The jury found that plaintiff sustained total and permanent incapacity as a result of injury sustained June 17, 1968.

■ The question to be determined here is whether under the whole record the arguments complained of were reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. Rule 434, Texas Rules of Civil Procedure.

■ Rule 269, T.R.C.P., requires counsel to confine his argument strictly to the evidence and to arguments of opposing counsel. The trial court has the duty, Rule 269(g), to stop violations of the rules as to jury argument even though no objection is made to such argument. We do not believe that any of the argument complained of was invited by defense counsel's argument.

It is difficult to see how the objective of obtaining a fair trial can be achieved if one person involved in the trial persists in violating the rules of argument.

■ Considering this entire record we believe that the cumulative effect of all the improper argument of plaintiff's counsel was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case.

Neither party's doctor testified that the injury of June 17, 1968, was a producing cause of plaintiff's permanent and total disability found by the jury. Even plaintiff's own doctor testified that in his opinion he should not have even been working as a laborer when hurt because of the disabling effect of the congenital defects existing in his back before he was hurt.

We believe that regardless of what objections and instructions the trial court gave the harmful effect of counsel's argument could not be removed by sustaining an objection and instructing the jury not to consider this argument. We also believe that reversible error is presented by the record in this case because of the cumulative effect of the erroneous argument of plaintiff's counsel as indicated above. See Southern Pacific Company v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956), and Magaline v. J. V. Harrison Truck Lines, Inc., et al., 446 S.W.2d 920 (Houston Tex. Civ.App., October 15, 1969).

The trial court's judgment is reversed and the cause is remanded for a new trial.